[Cite as *HSBC Bank USA v. Brinson*, 2023-Ohio-1462.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

HSBC BANK USA

    Appellee

v.

EVIS BRINSON, et al.

    Appellants

C.A. No.      30250

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV 2019-10-4167

DECISION AND JOURNAL ENTRY

Dated: May 3, 2023

---

STEVENSON, Judge.

{¶1}    Defendants-Appellants, Alisha and Evis Brinson ("Brinsons"), appeal from the judgment of the Summit County Court of Common Pleas in favor of Appellee, HSBC Bank USA, National Association Trustee for Deutsche ALT-A Securities, Inc. Mortgage Loan Trust, Series 2007-AR3 Mortgage Pass Through Certificate ("HSBC"). For the reasons that follow, this Court affirms.

I.

{¶2}    On October 19, 2006, Appellant Evis Brinson executed a promissory note ("Note") in the amount of $440,000.00 to Quicken Loans, Inc ("Quicken"). The Note was indorsed from Quicken to IndyMac Bank, F.S.B. ("IndyMac") who indorsed the Note in blank. The Note was then transferred to HSBC. HSBC obtained possession of the Note on January 8, 2007, when it was delivered to its records custodian, Deutsche Bank ("Deutsche"). HSBC remained in possession of the Note until July 30, 2014, when Deutsche, as custodian, delivered the note to

HSBC's loan servicing agent, Ocwen Loan Servicing, LLC ("Ocwen"). On June 17, 2019, Ocwen delivered the Note to Blank Rome, LLP ("Blank Rome"), where it was received by Attorney William Purtell, HSBC's counsel. The law firm of Manley, Deas, and Kochalski ("MDK") received the Note from Blank Rome, LLP on October 19, 2019.

{¶3} To secure repayment of the Note, the Brinsons executed and delivered a mortgage ("Mortgage") encumbering the property located at 292 Greensfield Lane, Copley, OH, 44321 to Mortgage Electronic Registration Systems, Inc. ("MERS"), solely as nominee for Quicken and Quicken's successors and assigns. MERS assigned the Note and Mortgage to HSBC Bank USA, National Association as Trustee For DALT 2007-AR3 ("HSBC-DALT") through an "Assignment of Note and Mortgage" that was executed on February 25, 2010 ("MERS Assignment").

{¶4} On November 10, 2010, and again on September 1, 2013, IndyMac Mortgage Services ("IndyMac Mortgage") entered into loan modifications with the Brinsons with MERS as the nominee for the lender and IndyMac Mortgage as the servicer. HSBC-DALT assigned the Mortgage to HSBC through a "Corporate Assignment of Mortgage" that was executed on July 30, 2015 ("HSBC Assignment"). That assignment was made simply to recognize a change in nomenclature. The assignee and assignor in the HSBC assignment are one and the same entity.

{¶5} In 2015, HSBC filed a complaint to foreclose on the Brinsons' Mortgage and to obtain judgment on the Note executed by Evis Brinson. HSBC moved for summary judgment. The Brinsons opposed the motion based on HSBC's lack of standing. The trial court granted HSBC's motion and the Brinsons appealed. This Court reversed and remanded, concluding that the trial court erred in granting HSBC's motion for summary judgment because HSBC failed to demonstrate the absence of a genuine issue of material fact regarding the chain of title for the Note

and Mortgage and its standing to enforce the Note and foreclose on the Mortgage. *HSBC Bank USA v. Brinson*, 9th Dist. Summit No. 28782, 2018-Ohio-3467, ¶ 24 ("*Brinson I*").

{¶6} On remand, HSBC renewed its motion for summary judgment. The Brinsons opposed the motion and moved to dismiss the complaint. The trial court dismissed the case without prejudice due to HSBC's lack of standing, stating that the documents attached to the complaint did not support an unbroken chain of title to the note and mortgage as required under *Brinson I. HSBC Bank USA v. Brinson*, Summit C.P. No. CV-2015-10-4994 (Oct. 31, 2018).

{¶7} On October 19, 2019, HSBC filed another complaint in foreclosure. HSBC moved for summary judgment. The Brinsons opposed the motion and filed a cross-motion for summary judgment. The trial court granted HSBC's motion, denied the Brinsons' cross-motion, and entered a decree of foreclosure. The Brinsons appealed. This Court dismissed the appeal for lack of a final appealable order, finding that the decree of foreclosure failed to resolve all the issues and was not a final decree; specifically, the order appealed did not set forth the amount due to the State of Ohio, Department of Taxation.

{¶8} HSBC then moved the trial court to amend its decree of foreclosure. The United States and the City of Akron filed amended answers to reflect their current lien status. On February 9, 2022, the trial court entered an amended decree to correct the error in its previous entry to include the amount due to the State of Ohio. In the amended decree, consistent with the original decree, the trial court granted HSBC's motion for summary judgment and denied the Brinsons' cross-motion for summary judgment, finding that there was no genuine issue of material fact regarding HSBC's standing to maintain the foreclosure action.

{¶9} The Brinsons timely appealed and assert four assignments of error for our review.

II

## ASSIGNMENT OF ERROR I

**THE TRIAL COURT ERRED IN GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, WHEN PLAINTIFF COULD NOT ESTABLISH STANDING.**

## ASSIGNMENT OF ERROR II

**THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT WHEN PLAINTIFF'S CHAIN OF TITLE AND SUPPORTING AFFIDAVIT CONTAINED DISCREPANCIES WHICH CREATED A QUESTION OF MATERIAL FACT.**

{¶10} As the first and second assignments of error both address the issue of whether the trial court erred in granting summary judgment in favor of HSBC, they will be consolidated for ease of analysis.

{¶11} Appellate courts consider an appeal from summary judgment under a de novo standard of review. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). This Court uses the same standard that the trial court applies under Civ.R. 56(C), viewing the facts of the case in the light most favorable to the nonmoving party and resolving any doubt in favor of the nonmoving party. *See Viock v. Stowe Woodward* Co., 13 Ohio App.3d 7, 12 (6th Dist.1983). Accordingly, this Court stands in the shoes of the trial court and conducts an independent review of the record.

{¶12} Summary judgment is proper under Civ.R. 56 when: (1) no genuine issue as to any material fact exists; (2) the party moving for summary judgment is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can only reach one conclusion, and that conclusion is adverse to the nonmoving party. Civ.R. 56(C); *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

**{¶13}** Summary judgment consists of a burden-shifting framework. The movant bears the initial burden of demonstrating the absence of genuine issues of material fact concerning the essential elements of the nonmoving party's case. *Dresher v. Burt*, 75 Ohio St.3d 292 (1996). Specifically, the moving party must support the motion by pointing to some evidence in the record of the type listed in Civ.R. 56(C). *Id*. at 292-293. Once the moving party satisfies this burden, the nonmoving party has a reciprocal burden to "set forth specific facts showing that there is a genuine issue for trial." *Id*. at 293, quoting Civ.R. 56(E). The nonmoving party "may not rest upon the mere allegations or denials of his pleadings," but instead must submit evidence as outlined in Civ.R. 56(C). *Id*., quoting Civ.R. 56(E).

**{¶14}** In a foreclosure action, the plaintiff moving for summary judgment must present

> Evidentiary-quality materials showing: (1) the movant is the holder of the note and mortgage, or is a party entitled to enforce the instrument; (2) if the movant is not the original mortgagee, the chain of assignments and transfers; (3) the mortgagor is in default; (4) all conditions precedent have been met; and (5) the amount of principal and interest due.

(Internal quotation marks and citations omitted.) *The Bank of New York Mellon v. Bridge*, 9th Dist. Summit No. 28461, 2017-Ohio-7686, ¶ 10, quoting *Bank of Am., N.A. v. Edwards*, 9th Dist. Lorain Nos. 15CA010848, 15CA010851, 2017-Ohio-4343, ¶ 10.

**{¶15}** Appellant's first assignment of error raises the issue of plaintiff's standing. A plaintiff in a foreclosure action must have standing at the time it files the complaint to invoke the jurisdiction of the court. *See Fed. Home Loan Mtge. Corp v. Schwartzwald,* 134 Ohio St.3d 13, 2012-Ohio-5017, ¶ 41. In order to have standing to foreclose a mortgage and to seek a judgment on a note, the plaintiff must hold both the note and the mortgage prior to filing the complaint. *See Bridge* at ¶ 20, citing *Bank of Am. N.A. v. McCormick,* 9th Dist. Summit No. 26888, 2014-Ohio-1393, ¶ 8.

{¶16} R.C. 1303.31(A) identifies three classes of persons who are "'entitled to enforce' an instrument" such as a note. HSBC asserts it is entitled to enforce as a "holder" of the note. R.C. 1303.31(A)(1). Generally, a person is a holder of the note by having physical possession of the note, which is either indorsed to that person or indorsed in blank. R.C. 1301.201(B)(21)(a). "When an instrument is indorsed in blank," i.e., it does not identify the payee, "the instrument becomes payable to bearer and may be negotiated by transfer of possession alone * * *." R.C. 1303.25(B). Thus, "[t]he holder of a note [i]ndorsed in blank is the possessor of the note." *McCormick*, 2014-Ohio-1393 at ¶ 8.

{¶17} "Under Ohio law, the right to enforce a note cannot be assigned; rather, the note must be negotiated in conformity with Ohio's version of the Uniform Commercial Code." *Wells Fargo Bank, N.A. v. Byers*, 10th Dist. Franklin No. 13AP-767, 2014-Ohio-3303, ¶ 16. However, it is possible for an assignment of the note to be made by negotiation under R.C. 1303.21(A) or transfer pursuant to R.C. 1303.22(A). "Negotiation" is the transfer of possession of the note "to a person who by the transfer becomes the holder of the instrument." R.C. 1303.21(A). The "transfer" of an instrument occurs when the note is physically delivered "for the purpose of giving the person receiving delivery the right to enforce the instrument." R.C. 1303.22(A).

{¶18} When a note is indorsed in blank, defenses relating to the chain of title are null and inapplicable, because it is immaterial how the person became the holder of the note. *Bank of N.Y. Mellon v. Froimson*, 8th Dist. Cuyahoga No. 99443, 2013-Ohio-5574, ¶ 15. The holder of the blankly indorsed note is automatically vested with the rights to enforce the mortgage, as "a transfer of the note by the owner, so as to vest legal title in the indorsee, will carry with it equitable ownership of the mortgage." *Kernohan v. Manss*, 53 Ohio St. 118, 133 (1895). "[P]hysical transfer of a note indorsed in blank, which the mortgage secures, constitutes an equitable

assignment of the mortgage, regardless of whether the mortgage is actually assigned or delivered."

*Deutsche Bank Natl. Trust Co. v. Najar*, 8th Dist. Cuyahoga No. 98502, 2013-Ohio-1657, ¶ 65.

{¶19} The trial court concluded that HSBC met its burden and that there were no genuine issues of material fact regarding its status as the holder of the Note with the right of enforcement. The trial court specifically found that, viewing the evidence in the light most favorable to the Brinsons, when IndyMac indorsed the Note in blank, the Note became bearer paper, enforceable by anyone in possession and negotiable by transfer of possession alone until specially indorsed; that the Note was in possession of HSBC's counsel at the time the complaint was filed; that by possessing the note in blank, HSBC was vested with equitable ownership of the mortgage, in addition to or without regard to the recorded assignment of mortgage, and; therefore, HSBC had standing to foreclose on the mortgage and seek judgment on the Note.

{¶20} To the contrary, the trial concluded that the Brinsons did not demonstrate that a genuine issue of material fact exists for trial on HSBC's motion for summary judgment, and did not meet their *Dresher* burden of demonstrating the absence of genuine issues of material fact in their cross-motion.

{¶21} Turning to the Brinson's first assignment of error, they state that their "true problem" with the trial court's decision is its conclusion that the blank indorsement to IndyMac gave HSBC the right to enforce the note when IndyMac was a mere mortgage servicer, not an owner of the note, and therefore, not a holder with the right to validly negotiate it.

{¶22} The Brinsons' argument is founded on their claim that by definition, a mortgage servicer cannot be a holder of a note with a right of enforcement, and therefore, cannot also bestow holder status on a subsequent transferee. However, the authorities they cite in support of their argument do not address that issue whatsoever, and therefore, have no bearing on this case. *See*

*Anderson v. Barclay's Capital Real Estate, Inc*. 136 Ohio St.3d, 2013-Ohio-1933, ¶ 27 (the servicing of a borrower's residential mortgage is not a consumer transaction, and a servicer is not a "supplier" under the Ohio Consumer Sales Practices Act, R.C. 1345.01(C)); *Fannie Mae v. Herren*, 8th Dist. Cuyahoga No. 105088, 2017-Ohio-8401 (negotiation of note defective as the corporate party indorsing note not in existence before the note negotiated; established requirements for reforming defective negotiation); *U.S. Bank v. George*, 10th Dist. Franklin No. 14AP-817, 2016-Ohio-7788 (every step in the chain of transfers must be supported by evidentiary materials).

**{¶23}** Based on the foregoing, the Brinsons' first assignment of error is overruled.

**{¶24}** Under their second assignment of error, the Brinsons' claim that nothing has changed since *Brinson I* other than that HSBC's new affidavit offers additional explanations of the same documents, and that the discrepancies still exist. We disagree.

**{¶25}** In *Brinson I*, this Court found that the documents referenced in the affidavit submitted by HSBC contained conflicting chains of title as to how and when HSBC Bank came into possession of the Note and did not address the contradictory evidence. This Court stated in pertinent part:

> While the affidavit stated that HSBC Bank was in possession of and was the holder of the note at the time the complaint was filed, the affidavit did not specify when or how HSBC Bank obtained possession of the note, i.e., based on the blank indorsement or the two assignments.

*Brinson I* at ¶ 17.

> The affidavit did not address why there was an indorsement from Quicken Loans, Inc. to IndyMac Bank, F.S.B., but no assignment of mortgage between those two entities and instead an Assignment of Note and Mortgage from Quicken Loans, Inc. to HSBC-[DALT]. *Accordingly, the assignment of mortgage in the record does not track with the purported indorsements on the note.* Because of the discrepancy between the assignments and the indorsements, HSBC Bank has failed to meet its initial *Dresher* burden * * *.

(Emphasis added.) *Id*. at ¶ 20, 21.

**{¶26}** By contrast, in the within case, the trial court rejected the Brinsons' claim that nothing had changed since *Brinson I*, finding as follows:

> The Brinsons' opposition focused on the fact that the indorsements and assignments of mortgage are the same from the original case filed in 2015, therefore, the same result should follow. *The Brinsons discount the additional evidence HSBC submitted in this case.*
>
> The Brinsons assert when Quicken indorsed the note to Indymac, the mortgage was not assigned to Indymac, therefore, breaking the chain of assignments and transfers. However, HSBC claimed [in its affidavit] that MERS held the mortgage from inception to the date of the MERS assignment in its role as nominee for the original lender, Quicken Loans, and each of its successors and assigns, *therefore a separate assignment of the mortgage at this time was unnecessary.*
>
> * * *
>
> The Brinsons raised many questions about the history of the transfer, negotiation, and assignment of the Note and/or mortgage. *However, the note was indorsed in blank by Indymac, and HSBC, through its counsel, was in possession of the note and had equitable ownership of the mortgage at the time the complaint in this case was filed, and it is immaterial how HSBC became the holder of the note.*

(Emphasis added.) *Id.*

**{¶27}** As the trial court pointed out, HSBC's new affidavit addressed the problem identified in *Brinson I* regarding the chain of possession of the Note and reflects how HSBC Bank obtained possession based on the blank indorsement. This Court has reviewed the new affidavit and its averments support the trial court's findings. The affidavit was sworn by an affiant with personal knowledge of the servicing records for HSBC. It traces the possession of the Note from Deutsche, as records custodian for HSBC in 2007, then to Ocwen on July 30, 2014. It further states that the indorsements from Quicken to IndyMac already existed when the Note was received by Ocwen; that Ocwen sent the Note to counsel for HSBC, Blank Rome, on June 14, 2019; that notwithstanding the language in the MERS Assignment, MERS was never in possession of the Note; and that possession of the original Note has been consistently with HSBC since 2007.

{¶28} The trial court also addressed the issue raised in *Brinson I* regarding the chain of assignment of the Mortgage and the fact that there was no assignment between Quicken and IndyMac. As the trial court explained, because MERS remained as the mortgagee while Quicken and Indy Mac each held the Note, there was no need for any assignment to or from either of them. Likewise, the affidavit reflects that MERS was the record holder of the Mortgage from its inception to the date of the MERS Assignment, acting throughout as a nominee for the original lender and each of its successors and assigns. While Quicken was the original lender, it named MERS as its nominee in the terms of the original mortgage so that MERS could execute any necessary assignments after Quicken no longer had an interest in the loan. There was therefore no need for IndyMac to assign the Mortgage as IndyMac was never the record assignee of the Mortgage.

{¶29} Furthermore, notwithstanding any defects in the chain of assignments of the Mortgage, Ohio law does not support the Brinsons' argument. As the trial court emphasized, the relevant case law on this subject provides that once HSBC was established as the holder of the blankly-indorsed Note, it was automatically vested with the right to enforce the Mortgage because the transfer of the Note to the current owner carried with it the equitable ownership of the mortgage, and thus, it is immaterial how HSBC became the holder. *Kernohan v. Manss*, 53 Ohio St. at 133; *Deutsche Bank Natl. Trust v. Najar*, 2013-Ohio-1657 at ¶ 65.

{¶30} Wherefore, the Brinsons' second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

**THE TRIAL COURT ERRED IN FAILING TO GRANT DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT ON [THE] BASIS OF ISSUE PRECLUSION.**

**{¶31}** In their third assignment of error, the Brinsons argue that even though the prior dismissal in *Brinson I* was without prejudice, this case is barred by the doctrine of issue preclusion because the issue of HSBC's lack of standing was already litigated in *Brinson I*.

> Issue preclusion prevents the relitigation of an issue where (1) the party against whom issue preclusion is asserted was a party or is in privity with a party to a prior action; (2) the prior action ended in a final judgment on the merits following a full and fair opportunity to litigate the issue; (3) the issue was actually litigated and determined and necessary to the judgment in the prior action; and (4) the issue sought to be precluded is identical to the issue decided in the prior action.

(Citations omitted.) *U.S. Bank Trust, N.A. v. Watson*, 3d Dist. Paulding No. 11-19-09, 2020-Ohio-3412, ¶ 24.

**{¶32}** The Brinsons argue under the third prong of *Watson* that HSBC's lack of standing was previously judicially determined on the same facts by the same parties as in *Brinson I*, and because HSBC was determined to not be a real party in interest in that case, the issue cannot be relitigated in this action, even if the prior dismissal was without prejudice. The Brinsons maintain that a dismissal for lack of standing contemplates a subsequent suit by a substituted real party in interest, in essence two different plaintiffs. We disagree.

**{¶33}** The Supreme Court of Ohio held in *Federal Home Loan Mortg. Corp. v. Schwartzwald,* 2012-Ohio-5017 that "[t]he lack of standing at the commencement of a foreclosure action requires dismissal of the complaint; however, that dismissal is not an adjudication on the merits and is therefore without prejudice. *Id.* at ¶ 40, citing *State ex rel. Coles v. Granville*, 116 Ohio St.3d 231, 2007-Ohio-6057, ¶ 51; *See also Bayview Loan Servicing, L.L.C. v. Likely*, 9th Dist. Summit No. 28466, 2017-Ohio-7693, ¶ 32-33. "Because there has been no adjudication on the underlying indebtedness, [the] dismissal has no effect on the underlying duties, rights, or obligations of the parties." *Schwartzwald* at ¶ 40.

{¶34} The Brinsons cite *U.S. Bank Trust, N.A. v. Watson,* 3d Dist. Paulding No. 11-10-09, 2020-Ohio-3412, in support of their argument. However, in that case, the 3rd District Court of Appeals upheld the trial court's dismissal of the first foreclosure action for lack of standing (inability to prove possession of the note) as "not an adjudication on the merits," stating that the dismissal did not bar U.S. Bank from bringing the second foreclosure. *Id.* at ¶ 37. In so holding, the *Watson* Court relied upon the aforementioned *Schwartzwald* and *Granville* cases that instead support HSBC's position. Thus, the Brinsons' argument regarding the applicability of *Watson* is not persuasive.

{¶35} Here, as in *Schwartzwald*, there was no adjudication on the underlying note and mortgage in *Brinson I*, thus the dismissal had "no effect on the underlying duties, rights, or obligations of the parties" *Schwartzwald* at ¶ 40. Therefore, the Brinsons' claim that the prior dismissal without prejudice was an adjudication on the merits is in error.

{¶36} Accordingly, the Brinsons' third assignment of error is overruled.

### ASSIGNMENT OF ERROR IV

**THE TRIAL COURT ERRED IN ENTERING A DECREE IN FORECLOSURE THAT CONTAINED INCORRECT LIEN AMOUNTS.**

{¶37} Under this assignment of error, the Brinsons argue that the amended foreclosure decree was incorrect because it contained prejudicial lien amounts of $256.48 for the City of Akron, and $32,917.03 for unpaid income taxes to the United States. In support, the Brinsons state that in its amended answer, the City of Akron acknowledged that its lien was repaid and that it no longer had any interest, and the United States' amended answer reflected a lien amount of $42,917.03. The Brinsons argue the matter is not final and must be remanded to accurately determine the amount of the liens. We disagree.

**{¶38}** The Ohio Supreme Court has held that a foreclosure decree is a final appealable order when each party's rights and responsibilities are fully set forth and all that remains is for the trial court to perform the ministerial task of calculating the final amounts that would arise during confirmation proceedings. *CitiMortgage v. Roznowski,* 139 Ohio St.3d 299, 2014-Ohio-1894, at ¶ 19. "Liability is fully and finally established when the court issues the foreclosure decree and all that remains is mathematics, with the court plugging in final amounts due after the property has been sold at a sheriff's sale" *Id.* at ¶ 25.

**{¶39}** If a dispute as to the final amounts due does arise, the parties may challenge those amounts by objecting to the confirmation entry or appealing the confirmation of sale. *Farmers State Bank v. Sponaugle,* 134 Ohio St. 3d 151, 2019-Ohio-2518, ¶ 19, citing *Roznowski* at ¶ 40 ("an appeal of the confirmation of sale is limited to challenging the * * * issues related to confirmation proceedings – for example, computation of the final total amount owed by the mortgagor, accrued interest, and amounts advanced by the mortgagee for inspections, appraisals, property protection, and maintenance"). On a practical level, no foreclosure decree would ever be final if the court was required to compute taxes and future costs as a prerequisite for finality. *Roznowski* at ¶ 16.

**{¶40}** Here, as in *Roznowski* and *Sponaugle,* the sole remaining issue is the final amount payable, which can be calculated and challenged during the confirmation of sale. The Brinsons are pursuing what the *Roznowski* ruling seeks to avoid, which is the endless appeal of a foreclosure decree where the amount owing for taxes or other items can constantly change via payment or the accrual of continued interest and fees.

**{¶41}** Therefore, based on the foregoing, whether the updated amounts should have been part of the amended judgment entry is a non-issue. Accordingly, the Brinson's fourth assignment of error is overruled.

### III

**{¶42}** The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

SCOT STEVENSON
FOR THE COURT

HENSAL, P. J.
FLAGG LANZINGER, J.
<u>CONCUR.</u>

<u>APPEARANCES:</u>

COLIN G. SKINNER, Attorney at Law, for Appellants.

ROBERT L. DAWSON and JOHN R. WIRTHLIN, Attorneys at Law, for Appellee.