[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. E. Ohio Gas Co. v. Corrigan*, Slip Opinion No. 2024-Ohio-1960.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-1960

THE STATE EX REL. EAST OHIO GAS COMPANY D.B.A. DOMINION ENERGY OHIO *v*. CORRIGAN, JUDGE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. E. Ohio Gas Co. v. Corrigan*, Slip Opinion No. 2024-Ohio-1960.]**

*Prohibition—Trial court lacks jurisdiction over claims related to shutoff of natural-gas service—Public Utilities Commission's expertise is necessary to decide alleged violations of R.C. 4933.12, and shutoff of natural-gas service is a practice normally authorized by a utility—Writ granted.*

(No. 2023-0833—Submitted April 9, 2024—Decided May 24, 2024.)

IN PROHIBITION.

_____

**Per Curiam.**

{¶ 1} Intervening respondent, J. William Vigrass, individually and as executor of Virginia Vigrass's estate, sued relator, East Ohio Gas Company d.b.a. Dominion Energy Ohio ("Dominion"), in the Cuyahoga County Court of Common

Pleas on claims relating to Dominion's shutoff of its natural-gas service to Virginia's residence. Respondent, Judge Peter J. Corrigan, is the judge assigned to that case. Dominion filed this original action in prohibition, asserting that Judge Corrigan patently and unambiguously lacks jurisdiction over J. William's action and that the Public Utilities Commission of Ohio has jurisdiction over J. William's claims. Dominion seeks an order to prevent Judge Corrigan from exercising jurisdiction and to vacate the orders he has issued in the underlying case. Dominion has also filed a motion to strike portions of J. William's brief. We grant the writ, and we grant the motion to strike in part and deny it in part.

## I. BACKGROUND

{¶ 2} J. William's complaint that he filed in the common pleas court asserted the following factual allegations. In October 2021, Dominion requested access to Virginia's residence to inspect the gas meter located inside. But because Virginia was immunocompromised and susceptible to the risks of COVID-19, she did not allow Dominion to enter the residence. In the ensuing months, Dominion attempted to contact Virginia by phone and paper notice. Virginia did not respond to the phone calls, but she apparently sent letters to Dominion. In his complaint, J. William did not set forth what Virginia wrote in those letters, but he represented that Dominion did not respond to them.

{¶ 3} On January 10, 2022, Dominion disconnected[1] its natural-gas service to Virginia's residence, even though her account with Dominion was paid in full. Due to the frigid temperatures inside the residence resulting from the loss of gas service, the water pipes inside Virginia's residence froze and burst. Water flooded the residence and froze, which caused damage to the residence and left it covered

---

1. The parties interchangeably refer to Dominion's actions on January 10, 2022, as constituting a "shutoff" of service, a "disconnection" of service, and a "termination" of service. We do the same.

in ice. On January 29, 2022, the police found Virginia within her residence, dead and frozen to the floor.

{¶ 4} In his complaint against Dominion, J. William asserted claims of negligence, negligence per se, wrongful death, and destruction of property. Dominion moved Judge Corrigan to dismiss the complaint for lack of subject-matter jurisdiction, arguing that the commission had exclusive subject-matter jurisdiction to decide J. William's claims because they related to a service issue. Judge Corrigan denied Dominion's motion, reasoning that he had jurisdiction over the complaint because J. William had asserted common-law claims.

{¶ 5} Dominion then filed this original action in prohibition, asserting the same jurisdictional argument that it had asserted to Judge Corrigan. Dominion's complaint seeks an order prohibiting Judge Corrigan from exercising jurisdiction over J. William's case and vacating Judge Corrigan's orders in the case. We have denied Judge Corrigan's motion to dismiss, sua sponte ordered him to file an answer, granted J. William's motion to intervene, and sua sponte granted an alternative writ ordering the submission of evidence and briefs. 171 Ohio St.3d 1464, 2023-Ohio-3697, 219 N.E.3d 950. The case is ripe for decision.

## II. ANALYSIS

### A. Motion to strike

{¶ 6} Dominion asks this court to strike from J. William's brief "certain unsworn and uncorroborated factual statements, inadmissible attorney arguments, and unauthenticated documents attached thereto as Exhibit B." J. William did not respond to the motion. Dominion claims that the items it seeks to have stricken are attempts by J. William, who did not file any evidence in this case, to "sensationalize" the facts and distract this court from the merits of Dominion's prohibition claim. We grant the motion in part and deny it in part.

{¶ 7} We grant Dominion's request to strike Exhibit B, which contains unauthenticated pictures purportedly of Virginia's front door. The pictures were

not filed by the deadline prescribed by this court's alternative writ schedule. And even if the pictures had been timely filed, they are not authenticated. *See State ex rel. Mun. Constr. Equip. Operators' Labor Council v. Cleveland*, 114 Ohio St.3d 183, 2007-Ohio-3831, 870 N.E.2d 1174, ¶ 39 (striking unauthenticated exhibits).

{¶ 8} We deny the motion to strike to the extent it seeks to strike portions of J. William's brief. To be sure, J. William takes certain liberties with the evidentiary record in this case. For example, without record support, he makes certain representations about Virginia's correspondence with Dominion and purports to explain aspects of her lifestyle that he views as having a bearing on our decision in this case. Even so, we have previously denied motions to strike portions of merit briefs, reasoning that we are "capable of disregarding statements that are not supported by the evidentiary record." *State ex rel. Maxwell v. Brice*, 167 Ohio St.3d 137, 2021-Ohio-4333, 189 N.E.3d 771, ¶ 15. We do the same here, declining Dominion's invitation to conduct a line-by-line examination of J. William's brief. Our ensuing analysis ignores the offending portions.

*B. Prohibition*

{¶ 9} To be entitled to a writ of prohibition, Dominion must show that (1) Judge Corrigan is about to or has exercised judicial power, (2) the exercise of that power is unauthorized by law, and (3) denying the writ would result in an injury for which no other adequate legal remedy exists. *State ex rel. Elder v. Camplese*, 144 Ohio St.3d 89, 2015-Ohio-3628, 40 N.E.3d 1138, ¶ 13. Dominion need not establish the lack of an adequate legal remedy if Judge Corrigan's lack of jurisdiction is patent and unambiguous. *Id.*

**1. Exercise of judicial power**

{¶ 10} There is no dispute here that Judge Corrigan has exercised judicial power. Rather, the critical question is whether, as Dominion argues, Judge Corrigan patently and unambiguously lacks jurisdiction over the underlying case.

### 2. Patent and unambiguous lack of jurisdiction

{¶ 11} A court of common pleas is a court of general jurisdiction. *See Bank of America, N.A. v. Kuchta*, 141 Ohio St.3d 75, 2014-Ohio-4275, 21 N.E.3d 1040, ¶ 20; R.C. 2305.01. However, this court has determined that a "court of common pleas lacks jurisdiction to hear a complaint regarding a utility's rates and services." *DiFranco v. FirstEnergy Corp.*, 134 Ohio St.3d 144, 2012-Ohio-5445, 980 N.E.2d 996, ¶ 23. This is so because

> [t]he General Assembly has created a broad and comprehensive statutory scheme for regulating the business activities of public utilities. R.C. Title 49 sets forth a detailed statutory framework for the regulation of utility service and the fixation of rates charged by public utilities to their customers. As part of that scheme, the legislature created the Public Utilities Commission and empowered it with broad authority to administer and enforce the provisions of Title 49.

*Kazmeier Supermarket, Inc. v. Toledo Edison Co.*, 61 Ohio St.3d 147, 150, 573 N.E.2d 655 (1991).

{¶ 12} As part of this statutory scheme, a person may file a complaint with the commission against a utility alleging that a "service rendered by [the] public utility 'is in any respect unjust, unreasonable, * * * or in violation of law.' " *State ex rel. Columbia Gas of Ohio, Inc. v. Henson*, 102 Ohio St.3d 349, 2004-Ohio-3208, 810 N.E.2d 953, ¶ 16, quoting R.C. 4905.26; *see* R.C. 4905.22 ("[e]very public utility shall furnish necessary and adequate service"). Ohio law also provides that if a public utility "does, or causes to be done, any act or thing prohibited by Chapters 4901., 4903., 4905., 4907., 4909., 4921., 4923., and 4927. of the Revised Code, or declared to be unlawful, or omits to do any act or thing

required by the provisions of those chapters, or by order of the public utilities commission, the public utility * * * is liable to the person * * * injured thereby in treble the amount of damages sustained in consequence * * *."  R.C. 4905.61.

{¶ 13} Read together, R.C. 4905.26 and 4905.61 establish that the commission will first hear a person's complaint alleging that a public utility has committed the misconduct contemplated by R.C. 4905.26; if the commission determines that the utility committed the misconduct, then a court of common pleas will hear the person's claim seeking treble damages under R.C. 4905.61.  *See Milligan v. Ohio Bell Telephone Co.*, 56 Ohio St.2d 191, 383 N.E.2d 575 (1978), paragraph one of the syllabus ("A Court of Common Pleas is without jurisdiction to hear a claim seeking treble damages pursuant to R.C. 4905.61 absent a prior determination by the Public Utilities Commission that there was in fact a violation of [the chapters specified in R.C. 4905.61] or an order of the Commission").

{¶ 14} To decide this case, we must determine whether J. William's action "relates to utility rates or service, or whether it is a pure tort action."  *DiFranco*, 134 Ohio St.3d 144, 2012-Ohio-5445, 980 N.E.2d 996, at ¶ 21.  To make this determination, we do not defer to the labels attached to a plaintiff's claims.  *Id.* at ¶ 26 ("we [have] rejected the notion that alleging a common-law tort is sufficient, by itself, to confer jurisdiction upon the common pleas court"); *State ex rel. Illum. Co. v. Cuyahoga Cty. Court of Common Pleas*, 97 Ohio St.3d 69, 2002-Ohio-5312, 776 N.E.2d 92, ¶ 21 ("we must review the substance of the claims rather than mere allegations that the claims sound in tort or contract").  Rather, this court applies the test first adopted in *Allstate Ins. Co. v. Cleveland Elec. Illum. Co.*, 119 Ohio St.3d 301, 2008-Ohio-3917, 893 N.E.2d 824, which "ask[s] (1) whether the [commission's] administrative expertise is required to resolve the issue in dispute and (2) whether the act complained of constitutes a practice normally authorized by the utility.  If the answer to either question is 'No,' the claim is not within the

[commission's] exclusive jurisdiction," *DiFranco* at ¶ 28, citing *Allstate* at ¶ 11-13.

### a. Whether the commission's administrative expertise is required to resolve the issue in dispute

{¶ 15} Dominion argues that the first part of the *Allstate* test is met because termination-of-service disputes require the commission's expertise to resolve. Dominion is correct.

{¶ 16} In *State ex rel. Duke Energy Ohio, Inc. v. Hamilton Cty. Court of Common Pleas*, 126 Ohio St.3d 41, 2010-Ohio-2450, 930 N.E.2d 299, a customer sued a utility in common pleas court alleging that the utility had imposed a wrongful charge and threatened to terminate service in violation of R.C. 4933.122(B). The customer sought, among other things, injunctive relief preventing the utility from terminating service and a declaratory judgment that it did not owe the money. Applying the test set forth in *Allstate*, we held that the customer's action fell within the commission's exclusive jurisdiction to decide. For the first prong, we concluded that the commission's expertise was necessary to decide the customer's claims. In doing so, we found it significant that the customer had alleged a violation of R.C. 4933.122, "which specifies the procedures for public utilities to terminate service." *Duke Energy Ohio* at ¶ 22.

{¶ 17} Our decision in *Duke Energy Ohio* also cited approvingly our pre-*Allstate* decisions in *Henson*, 102 Ohio St.3d 349, 2004-Ohio-3208, 810 N.E.2d 953, and *Milligan*, 56 Ohio St.2d 191, 383 N.E.2d 575. In *Henson*, a customer sued a utility in common pleas court, alleging that the utility had wrongfully terminated service without giving 24 hours' notice in violation of R.C. 4933.12(A), tortiously interfered with a business relationship, and committed grossly negligent and intentionally tortious misconduct. We determined in *Henson* that notwithstanding the customer's attempt to label the shutoff as an action sounding in tort, the claims were "manifestly" service related. *Henson* at ¶ 20. We held that "alleged service

violations by a public utility of R.C. 4933.12(A) are within the exclusive jurisdiction of the commission." *Id.* at ¶ 23. We reached a similar conclusion in *Milligan*, observing that a customer's claim that a utility had violated R.C. 4905.22 by wrongfully terminating his service was within the commission's exclusive jurisdiction to decide. *Milligan* at paragraph two of the syllabus.

**{¶ 18}** J. William's complaint repeatedly points to the shutoff of gas service to Virginia's residence as the basis for the claims he has asserted against Dominion. Under the "venue" section of his complaint, J. William claims that "the issue in dispute * * * arises under Ohio Revised Code Section 4933.12(C)." R.C. 4933.12(C) places limits on when a utility may shut off residential gas service between November 15 and April 15. Under the "facts" section of his complaint, J. William points to the "shut off [of] the gas" as causing property damage and Virginia's death. In the first count of his complaint, labeled "negligence," J. William faults Dominion for "shut[ting] off the gas supply." In his second count, labeled "negligence per se," J. William contends that Dominion violated R.C. 4933.12(C) because Virginia's account with Dominion was paid in full when it disconnected the gas service to her residence. In his third count, labeled "wrongful death," J. William alleges that Dominion's negligence—that is, its act of shutting off the gas—caused her death. And in his fourth count, labeled "destruction of property," J. William alleges that the shutoff of gas service to Virginia's residence caused property damage to her residence.

**{¶ 19}** Applying the logic of *Duke Energy Ohio* and the cases cited therein, we conclude that the first part of the *Allstate* test is met. The gravamen of J. William's complaint is that Dominion wrongfully disconnected service to Virginia's residence, and he specifically claims that the legal issue centers on R.C. 4933.12(C). The fact that J. William couched his claims as sounding in tort does not change the analysis, because, in substance, the claims are service related. *See, e.g.*, *DiFranco*, 134 Ohio St.3d 144, 2012-Ohio-5445, 980 N.E.2d 996, at ¶ 26.

**{¶ 20}** Judge Corrigan argues that this case is different because R.C. 4933.12(A) was at issue in *Henson*, 102 Ohio St.3d 349, 2004-Ohio-3208, 810 N.E.2d 953, whereas this case implicates R.C. 4933.12(C). This is a distinction without a difference. Both of these divisions of R.C. 4933.12 bear on the procedures a utility must heed in shutting off gas, and it would thus be incongruous to conclude that the commission has jurisdiction over one division of the statute but not the other.

**{¶ 21}** Dominion meets the first part of the *Allstate* test.

#### b. *Whether the act complained of constitutes a practice normally authorized by the utility*

**{¶ 22}** Although we agree that the first part of the *Allstate* test is met, because the test is conjunctive, our analysis does not end there. Dominion argues that the second part of the test is met because a termination of service is a practice normally authorized by a utility. Dominion is correct.

**{¶ 23}** Multiple authorities recognize Dominion's authority to terminate service. First is the caselaw. *See Duke Energy Ohio*, 126 Ohio St.3d 41, 2010-Ohio-2450, 930 N.E.2d 299, at ¶ 23 (recognizing that termination of service for nonpayment is a normally authorized practice); *Brown v. E. Ohio Gas Co.*, 8th Dist. Cuyahoga No. 96815, 2011-Ohio-6443, ¶ 11 ("termination of utility service is a practice normally authorized by the utility provider under Ohio law"); *Rafalski v. Dominion E. Ohio Co.*, 8th Dist. Cuyahoga No. 95908, 2011-Ohio-2931, ¶ 15 ("the acts that [the customer] complains of are practices normally authorized by the utility under the law, i.e., the termination of utility service"). Second is Ohio's statutory and regulatory law. *See, e.g.*, R.C. 4933.12 (providing that a utility may shut off service under certain conditions); Ohio Adm.Code 4901:1-18-03 (enumerating the reasons when a utility may disconnect service); Ohio Adm.Code 4901:1-18-06 (prescribing procedures a utility must follow in disconnecting service). And third is Dominion's tariff, which permits it to disconnect service in

accordance with Ohio Adm.Code Chapter 4901:1-18 if a customer refuses access to Dominion's equipment for such things as testing and repairs. *See In re Complaint of Reynoldsburg*, 134 Ohio St.3d 29, 2012-Ohio-5270, 979 N.E.2d 1229, ¶ 40-41, quoting *Migden-Ostrander v. Pub. Util. Comm.*, 102 Ohio St.3d 451, 2004-Ohio-3924, 812 N.E.2d 955, ¶ 8, fn. 5 (" 'Public utility tariffs are books or compilations of printed materials filed by public utilities with, and approved by, the commission that contain schedules of rates and charges, rules and regulations, and standards for service' " that have "the same binding effect as a law").

{¶ 24} Judge Corrigan and J. William argue that disconnections of gas service between November 15 and April 15 for customers whose accounts are paid in full is not a normally authorized practice, because such disconnections are barred by R.C. 4933.12(C). Dominion responds that Judge Corrigan's and J. William's reliance on R.C. 4933.12(C) is misplaced because it did not terminate its gas service to Virginia's residence for lack of payment; rather, Dominion says, it terminated service because Virginia would not grant it access to her metering equipment as required by federal and state pipeline safety regulations.

{¶ 25} We need not resolve the merits of whether Dominion conducted a lawful shutoff—that is a merits question left for resolution by the commission. *See Dworkin v. E. Ohio Gas Co.*, 8th Dist. Cuyahoga No. 57314, 1990 WL 32587, *2 (Mar. 22, 1990) ("Whether or not [the utility] violated R.C. 4933.12" is a question for the commission to decide). The narrow question here is whether, as a general matter, the act of shutting off service is one normally authorized by a utility. As we explained above, the caselaw, Ohio's statutory and regulatory law, and Dominion's tariff all establish that it is.

{¶ 26} The Seventh District Court of Appeals' decision in *Harris v. Ohio Edison Co.*, 7th Dist. Mahoning No. 94 C.A. 84, 1995 WL 494584 (Aug. 17, 1995), which Judge Corrigan and J. William prominently rely on, is not to the contrary. In that case, customers repeatedly notified the utility of problems with their

residential electrical system, but the utility never investigated the complaints. After a faulty neutral tap caused damage to their home, the customers sued the utility in common pleas court, asserting claims of negligence and intentional tort. The common pleas court granted the utility's motion to dismiss, and the customers appealed. The court of appeals reversed the judgment of the trial court, disagreeing that the claims were service related, but its analysis is elusive; without citing any authority, the court said that when "circumstances determining jurisdiction may be subject to more than one interpretation, then the basis of the complaint alone is insufficient to support a dismissal in absence of additional inquiry." *Id.* at *3.

{¶ 27} *Harris* does not resolve the jurisdictional issue in this case. First, the cryptic passage quoted in the preceding paragraph offers little guidance. Second, *Harris* is factually distinguishable because it did not involve, as here, a termination of service by a utility. Third, a later decision by the Seventh District Court of Appeals declined to follow *Harris* on facts closely resembling those here, namely, the disconnection of gas service to a residence. *See Higgins v. Columbia Gas of Ohio, Inc.*, 136 Ohio App.3d 198, 202-203, 736 N.E.2d 92 (7th Dist.2000) (finding residents' "reliance on [*Harris*] misplaced" because their "cause of action [was] based on an alleged wrongful termination of gas service to [their] residence").

{¶ 28} Dominion meets the second part of the *Allstate* test.

### III. CONCLUSION

{¶ 29} Because Dominion has shown that it meets both parts of the test set forth in *Allstate*, 119 Ohio St.3d 301, 2008-Ohio-3917, 893 N.E.2d 824, we grant a writ of prohibition ordering Judge Corrigan to cease exercising jurisdiction over the underlying case and directing him to vacate the orders that he has previously issued in the underlying case. *See State ex rel. Cleveland v. Russo*, 156 Ohio St.3d 449, 2019-Ohio-1595, 129 N.E.3d 384, ¶ 1 (granting similar relief in a prohibition action). Dominion's motion to strike is granted in part and denied in part.

Writ granted.

KENNEDY, C.J., and FISCHER, DeWINE, DONNELLY, STEWART, BRUNNER, and DETERS, JJ., concur.

————————————

McDonald Hopkins, L.L.C., Matthew R. Rechner, Adam C. Smith, and Tanjeet Dhillon, for relator.

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Matthew T. Fitzsimmons IV, Assistant Prosecuting Attorney, for respondent.

DiCello Levitt, L.L.P., Mark M. Abramowitz, and Nicholas M. Horattas, for intervening respondent.

————————————