[Cite as *E. Ohio Gas Co. v. Croce*, 2024-Ohio-5194.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

THE EAST OHIO GAS COMPANY D/B/A
DOMINION ENERGY OHIO

    Relator

    v.

JUDGE CHRISTINE CROCE

    Respondent

C.A. No.    30687

ORIGINAL ACTION IN
PROHIBITION

Dated: October 30, 2024

PER CURIAM.

{¶1} Relator, Dominion Energy Ohio, filed a complaint for a writ of prohibition to prevent respondent, Judge Christine Croce, from exercising subject matter jurisdiction in a matter pending before her, *Landmark 2 Limited Liability Company v. East Ohio Gas Co.*, No. CV-2021-09-2785, in the Summit County Common Pleas Court. While there were a number of procedural motions, responses, and rulings in this Court to reach this point, none of those are relevant to this decision. Instead, we will focus on the dispositive motions pending before us.

{¶2} Judge Croce answered the complaint and moved for summary judgment. Landmark, Moore Resources, and Moore Well Services, were granted leave to intervene, filed an answer, and also moved for summary judgment. Dominion Energy also moved for summary judgment. The parties all filed responses to the motions. The matter is ripe for decision and, as will be explained below, Dominion Energy's motion for summary judgment is granted.

{¶3}     To address the legal issues presented by this case, we must start by explaining what prompted this action.  Dominion Energy is a utility that is authorized to distribute natural gas in Ohio.  Dominion Energy must abide by various statutes, regulations, and its tariff.  The tariff is Dominion Energy's compilation of materials filed with and approved by the Public Utilities Commission of Ohio, or PUCO.  The tariff contains items like the utility's schedule of rates and charges as well as standards for service.  A utility's tariff has the same effect as law.

{¶4}     Dominion Energy established an "energy choice program" which is included in its tariff.  Through this program, Dominion Energy provides gas distribution to end users.  Rather than Dominion Energy selling gas to the users, gas suppliers offer to provide gas to the users and that gas is distributed by Dominion Energy.  The gas that is delivered by Dominion Energy is inserted into Dominion Energy's pipelines by producers.  The intervenors in this case are producers who operate wells near the Dominion Energy pipeline system.

{¶5}     The producers, Dominion Energy, and the suppliers work together to provide gas to end users.  Producers insert gas into Dominion Energy's pipeline system.  Suppliers have contracts with end users to sell gas to them.  The gas is delivered by Dominion Energy to the end users.

{¶6}     The gas that producers insert into the pipeline system is measured as the first step in the process.  Dominion Energy pools all of the gas that various producers insert.  Suppliers estimate the amount of gas their customers will require and "nominate" that amount to Dominion Energy.  A supplier must nominate all of the gas their customers – the end users – will use. The anticipated use is an estimate and, because the actual amount used will vary, Dominion Energy must reconcile the amount of gas the producers inserted into the system with the amount of gas

the supplier's customers used. Dominion Energy then credits or debits the supplier's pool for future use.

**{¶7}** This process is contained in the Energy Choice Pooling Service Agreement. Dominion Energy and the gas suppliers are the parties to this agreement. The producers, like the intervenors in this case, are not parties to the Energy Choice Pooling Service Agreement.

**{¶8}** With that background, we now consider the matter before us.

## Requirements for Writ of Prohibition

**{¶9}** Generally, for this Court to issue a writ of prohibition, the relator must establish that: (1) the judge is about to exercise judicial power, (2) the exercise of that power is unauthorized by law, and (3) the denial of the writ will result in injury for which no other adequate remedy exists. *State ex rel. Jones v. Garfield Hts. Mun. Court*, 77 Ohio St.3d 447, 448 (1997). There is no dispute that Judge Croce has exercised, and will continue to exercise, judicial power in the underlying case. Dominion Energy has alleged that Judge Croce patently and unambiguously lacks subject matter jurisdiction, which means that it does not need to demonstrate there is no adequate remedy at law.

**{¶10}** "[T]he purpose of a writ of prohibition is to restrain inferior courts and tribunals from exceeding their jurisdiction." *State ex rel. Jones v. Suster*, 84 Ohio St.3d 70, 73 (1998). A writ of prohibition "tests and determines solely and only the subject matter jurisdiction" of the lower court. *State ex rel. Eaton Corp. v. Lancaster*, 40 Ohio St.3d 404, 409 (1988). Although a common pleas court is a court of general jurisdiction, the Supreme Court has also concluded that a common pleas court lacks jurisdiction to hear a complaint regarding a utility's rates and services, but it has jurisdiction to hear a pure common-law tort claim. *DiFranco v. FirstEnergy Corp.*, 2012-Ohio-5445, ¶ 23.

{¶11} This matter is now before us on three competing motions for summary judgment. All three motions agree that there are no disputes as to material facts and all movants claim to be entitled to judgment as a matter of law. The question before us is whether Judge Croce patently and unambiguously lacks subject matter jurisdiction in the underlying case.

### The case before Judge Croce

{¶12} The gas supply procedure outlined at the start of this decision provides the background for understanding the claim brought by the producers in the underlying case and, necessarily, for deciding this case. Picking up with the procedure described above, the producers measure the amount of gas they insert into the Dominion Energy pipeline system. They alleged in the underlying case that they insert more gas into the pipeline than the suppliers nominate each month and, further, the producers are only paid for the gas that is nominated. According to the producers, the excess gas is retained by Dominion Energy and the producers are not compensated for that gas.

{¶13} Dominion Energy contends that this is a matter that must be decided by PUCO because PUCO has exclusive jurisdiction. Intervenors and Judge Croce, on the other hand, argue that this is a matter that does not fall within the exclusive jurisdiction of PUCO.

### When does PUCO have exclusive jurisdiction?

{¶14} The Ohio Supreme Court considered when PUCO has exclusive jurisdiction in a recent decision. *State ex rel. E. Ohio Gas Co. v. Corrigan*, Slip Opinion No. 2024-Ohio-1960. The Supreme Court recognized that a common pleas court is a court of general jurisdiction, but, that a common pleas court lacks jurisdiction to hear a complaint regarding a utility's rates and services. *Id.* at ¶ 11. This is because the General Assembly created in R.C. Title 49 a broad, comprehensive statutory scheme for regulating the business activities of public utilities. *Id.*

quoting *Kazmeier Supermarket, Inc. v. Toledo Edison Co.*, 61 Ohio St.3d 147, 150 (1991). As part of that scheme, the General Assembly established PUCO to administer and enforce the statutory provisions. *Id.* But the Supreme Court has long recognized that courts retain limited jurisdiction over pure common-law tort actions involving utilities regulated by PUCO. *See e.g., State ex rel. The Illum. Co. v. Cuyahoga Cty. Court of Common Pleas*, 2002-Ohio-5312, ¶ 20. Examples of pure common-law tort claims include a claim for invasion of privacy and a claim that a utility failed to warn landowners of the dangers associated with neutral-to-earth voltage. *Kazmaier*, 61 Ohio St.3d at 154. Although a contract claim is not at issue in this case, the Supreme Court has similarly recognized that courts retain jurisdiction over a "pure contract case" that presents, for example, a dispute between a utility and its uniform supplier. *Hull v. Columbia Gas of Ohio*, 2006-Ohio-3666, ¶ 34.

{¶15} The Supreme Court's recent *Corrigan* decision sets out a framework for our analysis. In that case, the utility shut off natural gas service to a home during January and, because there was no heat, the pipes burst, water flooded the home, and the home's resident was later found dead and frozen to the floor. *Id.* at ¶ 3. The executor of the estate filed a civil action in common pleas court against the utility. After the trial court denied a motion to dismiss for lack of subject-matter jurisdiction, the utility sought a writ of prohibition from the Supreme Court. *Id.* at ¶ 4-5.

{¶16} As in the case before us, there was no question that the trial court judge in that case had exercised and was going to continue to exercise jurisdiction. The question before the Supreme Court was whether the judge patently and unambiguously lacked jurisdiction.

{¶17} The Court began by analyzing the statutory scheme mentioned above. The Court recognized that a person may file a complaint with PUCO against a utility alleging that a service rendered by the utility is in any respect unjust, unreasonable, or unlawful. *Id.* at ¶ 12, quoting R.C.

4905.26. If a public utility does anything prohibited by various chapters in Title 49, the public utility is liable to the injured person for treble damages. *Id.* quoting R.C. 4905.61. Thus, the Supreme Court recognized that by reading R.C. 4905.26 and 4905.61 together, PUCO will first hear a complaint about a violation and, if there is a violation, a court of common pleas will hear the claim regarding damages. *Id.* at ¶ 13. "R.C. 4905.26 confers exclusive jurisdiction on PUCO to determine whether any 'service rendered' by a public utility or *any 'practice affecting or relating to any service furnished by a public utility, or in connection with such service'* is in any respect unjust, unreasonable, or in violation of law." (Emphasis added.) *Pro Se Commercial Properties v. Illum. Co.*, 2010-Ohio-516, ¶ 8 (8th Dist.).

### "Utility Rates or Service" or Pure Tort Action

{¶18} The question, then, is whether the action pending before Judge Croce relates to utility rates or service or whether it is a pure tort action. When answering this question, this Court must review the substance of the claims rather than simply consider that the mere allegations of the claims sound in tort. *Illum. Co.*, 2002-Ohio-5312, ¶ 21.

{¶19} The parties agree that *Allstate Ins. Co. v. Cleveland Elec. Illum. Co.*, 2008-Ohio-3917, sets forth the test to determine this question. *See also Corrigan* at ¶ 14. The *Allstate* test contains two prongs: (1) whether PUCO's administrative expertise is required to resolve the issue in dispute, and (2) whether the act complained of constitutes a practice normally authorized by the utility. If the answer to either question is in the negative, the claim is not within PUCO's exclusive jurisdiction. *Allstate* at ¶ 11-13.

{¶20} The facts in *Allstate* are unlike the facts in the case before us, but they are helpful for understanding how to apply the Supreme Court's analysis. Allstate alleged that a utility was negligent in responding to a customer's service call and, as a result, damage resulted to the

customer's home. *Id.* at ¶ 1. The customer submitted a claim to her insurer, Allstate, and Allstate filed a subrogation claim in common pleas court against the utility. *Id.* at ¶ 3. The trial court denied the utility's motion to dismiss for lack of jurisdiction and a jury found the utility negligent and awarded damages to Allstate. *Id.* ¶ 4. The utility appealed and the court of appeals reversed, holding that PUCO had exclusive jurisdiction. *Id.*

{¶21} The Supreme Court began its analysis by recognizing that PUCO has exclusive jurisdiction over most matters concerning public utilities. *Id.* at ¶ 5. That conclusion, however, did not diminish the jurisdiction of common pleas courts in claims against utilities involving pure tort and contract claims. *Id.* at ¶ 6. Thus, the Supreme Court had to determine whether PUCO had exclusive jurisdiction over the subrogation claim and, to do that, it had to determine whether the claim was service related or involved a common-law tort. *Id.* at ¶ 7.

{¶22} A mere allegation that a claim sounds in tort is insufficient to establish a claim involves a common-law tort. *Id.* at ¶ 8. Instead, a court must look to the substance of the claim. *Id.* at ¶ 9. The Supreme Court recognized that both Allstate and the utility offered strong arguments for their positions. *Id.* at ¶ 10. The Court adopted the two-pronged test, mentioned above, to determine whether a common pleas court or PUCO has jurisdiction over a case involving a utility. *Id.* at ¶ 11-12. After applying this test, we conclude the claim in this case is within PUCO's exclusive jurisdiction.

**PUCO's expertise is required to resolve the issue in dispute**

{¶23} The first prong of the *Allstate* test requires this Court to determine whether PUCO's expertise is required to resolve the issue in dispute. Notwithstanding the producers' efforts to make this action sound like a tort, based on precedent from the Supreme Court, it is a service

related issue – a service rendered by a public utility or a practice affecting or relating to any service furnished by the public utility – which requires PUCO's expertise.

**{¶24}** The *Allstate* Court recognized that the negligence claim in that case was like any other claim "brought against a business that negligently fails to correct a known dangerous condition on its property." *Id.* at ¶ 14. In the case before us, however, the claim turns on interpretation and application of the Energy Choice Program and Dominion Energy's tariff.

**{¶25}** The *Corrigan* Court looked to the nature of the claim to conclude that shutoff of gas service is a service issue. *Corrigan*, 2024-Ohio-1960, ¶ 18. The Court concluded that the gravamen of the complaint was that Dominion wrongfully disconnected service. *Id.* at ¶ 19. The Court noted that the complaint cited to the Revised Code section related to when a utility may disconnect service, a section that falls under the jurisdiction of PUCO. *Id.* at ¶ 19-20.

**{¶26}** In this case, the complaint in the underlying case did not cite to any PUCO-related provisions of the Revised Code. It did, however, refer to the Energy Choice Program. The complaint spent several pages explaining the procedure, outlined at the start of this decision, by which gas is inserted into the Dominion Energy pipeline system by producers for use by the suppliers, but allegedly without Dominion Energy providing proper compensation. Although the complaint alleged that Dominion Energy tortiously stole gas from producers, couching the claims as "sounding in tort does not change the analysis, because, in substance, the claims are service related." *Corrigan* at ¶ 19.

**{¶27}** Finally, we also consider intervenors' answer filed in this case. In answering the allegations of the complaint, paragraph 34 of the intervenors' answer in this case acknowledges that, under the tariff, Dominion Energy is responsible for all damages to third parties. Again, the tariff will play a significant role in determining the claim.

{¶28}  The suppliers described their claim as a basic math problem.  That characterization ignores the impact the tariff, Revised Code, and Energy Choice Program have on determining how to resolve that question.  After all, the suppliers would not have inserted their gas into Dominion Energy's pipelines if not for the tariff and Energy Choice Program.  Regardless of how the suppliers characterize their claims, they are based on the Revised Code and tariff governing the utility and are related to a service provided by the utility or a practice affecting or relating to a service provided by the utility.  Dominion Energy has met the first prong of the *Allstate* test.

**The act complained of constitutes a practice normally authorized by the utility**

{¶29}  The *Allstate* test is conjunctive, so we must now consider the second prong: whether the act complained of constitutes a practice normally authorized by the utility.  Based upon our description of how the Energy Choice Program operates, we conclude that the answer to this question is yes.

{¶30}  The Supreme Court's recent *Corrigan* case makes a key point.  The question is not whether the action taken is lawful.  That is a question to be answered by PUCO.  *Corrigan* at ¶ 25.  Instead, we are confronted by a narrow question:  whether the act taken by Dominion Energy here is one normally authorized by a utility.  *Id.*

{¶31}  The acts at issue in the case before Judge Croce are the producers inserting gas into Dominion Energy's pipeline system and Dominion Energy accepting that gas from the producers, all pursuant to the Energy Choice Program and the tariff.  The underlying case further claims that Dominion Energy kept excess gas without fully compensating the producers for the gas they inserted into the pipeline.  The act of accepting the gas falls directly within the scope of acts authorized by a utility.  The attempt to characterize these acts as tortious does not, however, change the nature of the act as one normally authorized by a utility.

**{¶32}** Looking at the narrow question – whether the act taken by Dominion Energy here is one normally authorized by a utility – we must conclude that the Energy Choice Program Agreement and Dominion Energy's tariff establish that the act at issue in this case is one that is normally authorized by the utility.

## Conclusion

**{¶33}** Because Dominion Energy has shown that it meets both parts of the test set forth in *Allstate*, 2008-Ohio-3917, we grant a writ of prohibition ordering Judge Croce to cease exercising jurisdiction over the underlying case. We further order Judge Croce to vacate the orders that she has previously issued in the underlying case. *Corrigan* at ¶ 29.

**{¶34}** Costs of this action are taxed to Respondents. The clerk of courts is hereby directed to serve upon all parties not in default notice of this judgment and its date of entry upon the journal. *See* Civ.R. 58(B).

JENNIFER L. HENSAL
FOR THE COURT

STEVENSON, J.
CONCURS.

CARR, J.
DISSENTING.

**{¶35}** Because I conclude that Dominion Energy has not met its burden to demonstrate by clear and convincing evidence that Judge Croce patently and unambiguously lacked jurisdiction to consider the claims before her, I respectfully dissent. *See, e.g., State ex rel. Evans v. McGrath*, 2018-Ohio-3018, ¶ 4.

**{¶36}** As the majority opinion explained, Dominion Energy sought a writ of prohibition to prevent Judge Croce from proceeding on a tort claim filed in the Summit County Court of Common Pleas. There is no dispute that Judge Croce and that court have jurisdiction to determine tort claims. Dominion Energy has argued, and the majority has agreed, however, that this claim falls within the exclusive jurisdiction of PUCO.

**{¶37}** Judge Croce considered Dominion Energy's argument in a motion filed in the underlying case. After a thorough review of the arguments and case law, she concluded that the dispute before her did not fall within PUCO's exclusive jurisdiction. Judge Croce recognized, and I agree, that PUCO has exclusive jurisdiction over *most* matters concerning public utilities, but it does not have jurisdiction over *all* matters. The Supreme Court recognized this in the test it set forth in *Allstate*, carving out an exception to PUCO's exclusive jurisdiction for pure tort claims.

**{¶38}** Upon review of the petition and pleadings in this case, Dominion Energy has not met its burden to demonstrate by clear and convincing evidence that the dispute falls under PUCO's exclusive jurisdiction. Accordingly, Dominion Energy has not shown that Judge Croce does not patently and unambiguously lack jurisdiction over the underlying tort case.

**{¶39}** Because I would grant Judge Croce's motion for summary judgment allowing her to proceed in the case before her, I respectfully dissent.

APPEARANCES:

JULIE A. CROCKER, ADRIAN D. THOMPSON, and GREGORY KROCK, Attorneys at Law, for Relator.

ELLIOT KOLKOVICH, Prosecuting Attorney, and JENNIFER PIATT, Assistant Prosecuting Attorney, for Respondent.

MARSHAL M. PITCHFORD, R. ALLEN SMITH, ANDREW S. LEVETOWN, AND STEVEN T. WEBSTER, Attorneys at Law, for Respondents.