SANDERS, Appellant,

v.

FIRSTENERGY CORP., Appellee.

[Cite as *Sanders v. FirstEnergy Corp.*, 157 Ohio App.3d 826, 2004-Ohio-3214.]

Court of Appeals of Ohio,
Seventh District, Jefferson County.

No. 03–JE–18.

Decided June 14, 2004.

Tisone & Associates and Raymond J. Tisone, for appellant.

Roetzel & Andress, Gary W. Spring and James L. Cole, for appellee.

---

GENE DONOFRIO, Judge.

{¶ 1} Plaintiff-appellant, Clinton Sanders, appeals from a Jefferson County Common Pleas Court decision awarding summary judgment in favor of defendant-appellee, FirstEnergy Corporation.

{¶ 2} Appellee is an electricity provider. It operates power plants, including the Sammis Power Plant ("Sammis"), located in Jefferson County, Ohio. Appellant is a former Sammis employee. He began his employment with appellee in 1977 and was terminated in November 2000. Appellant worked in the storeroom as a power plant attendant B from 1991 until his termination. He was a member of the Utility Workers Union of America.

{¶ 3} According to Frank Lubich, the Sammis plant manager, during 2000 Sammis had an extremely large amount of overtime. At the same time, it had a significant number of employees with medical restrictions limiting their ability to work overtime. Because of the large amount of overtime and the restrictions on numerous employees, the employees who could work overtime became burned-out and began complaining. Thus, management began examining the overtime restrictions submitted by the employees and found that, in many cases, the medical information was outdated or conclusory. Management then asked the restricted employees to submit updated medical information. The employees were reminded that if they were permanently unable to work overtime, their continued employment was in jeopardy due to their inability to perform what the company considered an essential job function.

{¶ 4} Still according to Lubich, upon the re-evaluation, the number of employees with overtime restrictions was reduced by approximately two thirds. But appellant remained one of those with a restriction. Appellant's physician, Dr. Himanshu Desai, submitted a report stating that appellant suffered from sleep apnea, which was a permanent condition for the foreseeable future. Dr. Desai further stated that appellant was to work no overtime.

{¶ 5} Appellant met with management twice to discuss his ability to work overtime. According to Michael Rhyal, the director of industrial relations, when asked if he could stay and work even a half hour of overtime, appellant responded: "Absolutely not. You got my restrictions. I can't work any overtime, period. That's not me, that's my doctor." Appellant suggested that the company review his restrictions with Dr. Desai. Per appellant's suggestion, appellee's medical director, Dr. Timothy Newman, contacted Dr. Desai. Dr.

Newman informed Dr. Desai that if appellant's medical condition was permanent, it could affect his employment. However, Dr. Desai confirmed his opinion that appellant could work only a regular shift and no overtime. He also informed Dr. Newman that appellant's condition was permanent. Dr. Newman then reported to appellee that appellant's condition was permanent and that he could not work overtime. Appellee then decided to terminate appellant's employment.

{¶ 6} Appellant filed a complaint against appellee alleging disability discrimination in violation of the Americans with Disabilities Act ("ADA"), Ohio statutes, and public policy, and claimed emotional distress. The case was removed to federal court because of the civil rights claim for violation of the ADA. After appellant voluntarily dismissed his ADA claim, the case was remanded to the trial court.

{¶ 7} On February 28, 2003, appellee filed a motion for summary judgment alleging that no genuine issues of material fact existed to preclude judgment.

{¶ 8} Appellant later filed an amended complaint on June 2, 2003, dropping all claims except for his complaint that appellee terminated his employment because of his disability in violation of R.C. 4112.02(A) and R.C. 4112.99.

{¶ 9} In granting appellee's summary judgment motion, the trial court found that while a genuine issue of material fact existed as to whether appellant's sleep apnea constituted a disability, no question of fact existed that overtime was an essential job function that appellant could not fulfill.

{¶ 10} Appellant filed his timely notice of appeal on June 30, 2003.

{¶ 11} Appellant raises one assignment of error, which states:

{¶ 12} "When there is direct evidence that an employee is disabled and that an adverse employment action was taken against him, at least in part on account of his disability, and when he challenges whether a condition of his employment is an essential function, a question of fact is created and granting a motion for summary judgment constitutes reversible error."

{¶ 13} Appellant argues that whether his sleep apnea is a disability and whether overtime is an essential job function are both jury questions, which cannot be disposed of by summary judgment. He asserts that appellee's decision to fire him was based on his disability. Thus, he provided direct evidence of discrimination. Appellant relies on *Monette v. Electronic Data Sys. Corp.* (C.A.6, 1996), 90 F.3d 1173, for support. In *Monette,* the plaintiff sued his former employer, alleging an ADA violation for firing him. The court stated that when an employer admits, or the evidence establishes, that the employer based its decision on the employee's disability, direct evidence of discrimination exists and a burden-shifting analysis does not apply. Id. at 1180. Appellant points out in

this case that it is undisputed that appellee discharged him because he was unable to work overtime due to his sleep apnea. (Defendant's Exh. G).[1]

{¶ 14} Appellant next argues that when he challenged appellee's statement that overtime is an essential job function, the burden of proof shifted to appellee to show that overtime is an essential function, which created a jury question. Appellant notes that he is not seeking an accommodation but is arguing that he can perform the essential functions of his job. Appellant again relies on *Monette,* which held:

{¶ 15} "In cases in which the plaintiff is claiming to be qualified to perform the essential functions of the job without reasonable accommodation, and the employer's defense is that the employee's handicap precludes satisfactory job performance, objective evidence will suffice to establish the fact in question; namely whether the employee's handicap renders him or her unqualified to perform the essential functions of the job. There is no immediately apparent need to shift the burden to the employer in such cases on the issue of whether the employee can perform the essential functions of the job, and the disputed factual question can be resolved through traditional methods of proof." Id., 90 F.3d at 1182–1183.

{¶ 16} Appellant further argues that since appellee permitted certain workers not to work overtime due to short-time restrictions, it cannot claim that his working more than 40 hours per week is an essential function of the job. He also points out that the Sixth Circuit has held that whether a given function is essential is typically a question of fact not suitable for summary judgment, citing *Hall v. United States Postal Serv.* (C.A.6, 1988), 857 F.2d 1073, 1079.

{¶ 17} Finally, appellant asks us to examine the facts of this case in light of the seven Section 1630.2(n)(3), Title 29, C.F.R. factors, as have the federal courts, to determine whether a job function is essential.

{¶ 18} Initially, it should be noted that the parties attached uncertified deposition excerpts, uncertified arbitration hearing excerpts from appellant's grievance arbitration, and various other unverified documents, including doctors' reports and letters, to the motion for summary judgment and brief in opposition to summary judgment. There is no indication on the docket sheet that the parties filed the full depositions or arbitration transcript with the trial court, nor did they file them with this court. Civ.R. 56(C) provides in part:

{¶ 19} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show

---

1. All references to exhibits are to the exhibits attached to appellant's and appellee's motion for and reply to summary judgment.

that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule."

{¶ 20} The deposition excerpts, transcript excerpts, and other miscellaneous evidence do not fall under any of the types of evidence a court may consider when determining a summary judgment motion. But this court recently recognized that while a court is not required to consider improper summary judgment evidence, it *may* consider such evidence if neither party objects. *Chamberlin v. Buick Youngstown Co.*, 7th Dist. No. 02–CA–115, 2003–Ohio–3486, 2003 WL 21504471.

{¶ 21} In the present case, it is clear that the trial court considered the improper summary judgment evidence. The trial court makes detailed findings in its judgment entry that it could have gained knowledge of only through the improper summary judgment evidence. Furthermore, neither party objected to the court's consideration of the improper summary judgment evidence, as each party is guilty of attaching such evidence to a motion or brief. Thus, we too will consider the improper evidence despite its noncompliance with Civ.R. 56(C). However, we advise the attorneys to peruse Civ.R. 56(C) before filing future motions for or responses to summary judgment.

{¶ 22} In reviewing an award of summary judgment, appellate courts must apply a de novo standard of review. *Cole v. Am. Indus. & Resources Corp.* (1998), 128 Ohio App.3d 546, 552, 715 N.E.2d 1179. Thus, we shall apply the same test as did the trial court in determining whether summary judgment was proper. Civ.R. 56(C) provides that the trial court shall render summary judgment if no genuine issue of material fact exists and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. *State ex rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377. A "material fact" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.* (1995), 104 Ohio App.3d 598, 603, 662 N.E.2d 1088, citing *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 247–248, 106 S.Ct. 2505, 91 L.Ed.2d 202.

{¶ 23} It is an unlawful discriminatory practice for an employer, because of the disability of any person, "to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." R.C. 4112.02(A). To establish a prima facie case of

handicap[2] discrimination, the plaintiff must demonstrate "(1) that he or she was handicapped, (2) that an adverse employment action was taken by an employer, at least in part, because the individual was handicapped, and (3) that the person, though handicapped, can safely and substantially perform the essential functions of the job in question." *Hood v. Diamond Products, Inc.* (1996), 74 Ohio St.3d 298, 658 N.E.2d 738, paragraph one of the syllabus.

{¶ 24} According to the *Hood* elements, appellant must first demonstrate that he is disabled within the scope of R.C. Chapter 4112. The code defines a "disability" as "a physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working; a record of a physical or mental impairment; or being regarded as having a physical or mental impairment." R.C. 4112.01(A)(13).

{¶ 25} Appellant was diagnosed with sleep apnea. (Plaintiff's Exh. 6.) Sleep apnea is "an abnormal condition marked by repeated stops in breathing during sleep that last long enough to cause an oxygen deficiency in the blood." Attorney's Dictionary of Medicine (2002), at S–178. The breathing cessations last ten or more seconds each time and may recur 30 or more times per night. Id.

{¶ 26} The trial court found that a genuine issue of material fact existed as to whether appellant's sleep apnea constitutes a disability. The court reasoned that constant breathing disruptions preventing any sleep would undoubtedly result in a substantial limitation during working hours, while infrequent or moderate disruptions would not. It found that, in this case, no evidence was presented as to the degree to which appellant's sleep apnea impairs his sleep. Thus, it reasoned, a finding that appellant was not disabled would be tantamount to finding that sleep apnea is never a disability. Therefore, the court found that a genuine issue of material fact existed as to whether appellant's sleep apnea rose to the level of a disability.

{¶ 27} While appellee cites cases that have found that sleep apnea and other breathing ailments are not disabilities, it has been held that whether a condition constitutes a disability must be determined on a case-by-case basis. *Lanterman v. Columbia Gas of Ohio, Inc.*, 7th Dist. No. 01–CO–54, 2002–Ohio–5224, 2002 WL 31169030, citing *Albertson's, Inc. v. Kirkingburg* (1999), 527 U.S. 555, 119 S.Ct. 2162, 144 L.Ed.2d 518; *Hood,* 74 Ohio St.3d at 303, 658 N.E.2d 738.

{¶ 28} Appellant submitted his own affidavit, in which he stated the following. He has had frequent awakenings at night including episodes of gasping and

---

**2.** Ohio's antidiscrimination statutes were amended on March 17, 2000, to use the term "disability" instead of "handicap." *DeBolt v. Eastman Kodak Co.* (2001), 146 Ohio App.3d 474, 766 N.E.2d 1040, fn. 3.

choking. (Plaintiff's Exh. 1.) He has become tired at work to the point that he has had to take a nap during his lunch break to make it through an eight-hour day. (Plaintiff's Exh. 1.) He tries to take a nap each day if it is necessary for him to be alert, e.g., to drive. (Plaintiff's Exh. 1.) He has fallen asleep riding in a car and watching television. (Plaintiff's Exh. 1.) He has needed to open the windows in his car to stay awake, especially on days he has worked overtime. (Plaintiff's Exh. 1.) He wears a C–PAP mask and machine at night, which force air through a humidifier into his lungs. His sleep is not consistent. (Plaintiff's Exh. 1.) One afternoon, by the time he got home, he was slurring his words and was unable to stay awake. (Plaintiff's Exh. 1.)

{¶ 29} This evidence, while not overwhelming, tends to demonstrate a genuine issue of material fact as to whether appellant is disabled. While many people fall asleep watching television or need to roll down the window on the drive home after working overtime, it is not common to require lunchtime naps or slur one's speech due to tiredness. Sleep apnea is a physical impairment, and appellant has demonstrated a factual question about whether his impairment substantially limits the major life activities of breathing and performing manual tasks, such as driving.

{¶ 30} According to the second *Hood* element, appellant must show that appellee terminated his employment, at least in part, because appellant was disabled. While appellee argues that sleep apnea is not a disability, it does not dispute that it terminated appellant due to his inability to work overtime caused by his sleep apnea. (Defendant's Exh. G. "[A]s a result of your medical condition, you are no longer qualified to perform all of the essential functions of your job"). Thus, appellant has satisfied the second element.

{¶ 31} Finally, per the third *Hood* element, appellant must present evidence that although he is disabled, he can safely and substantially perform the essential functions of his job. Under the disability discrimination law, an employer cannot require that every employee be able to perform every conceivable function of every job. *Miami Univ. v. Ohio Civ. Rights Comm.* (1999), 133 Ohio App.3d 28, 41, 726 N.E.2d 1032. Instead, the disabled employee must be able to perform the essential functions with or without reasonable accommodation. Id. Here, appellant does not request that appellee provide a reasonable accommodation but instead argues that overtime is not an essential job function.

{¶ 32} As appellant stated, generally the determination of whether a certain function is essential is a question for the jury. *Brickers v. Cleveland Bd. of Edn.* (C.A.6, 1998), 145 F.3d 846, 849. But the determination of whether a physical qualification is an essential job function must be made by a highly fact-specific inquiry. *Hall,* 857 F.2d at 1079. This determination should reflect the

actual functioning and circumstances of the particular business involved and should be based on more than statements in a job description. Id.

{¶ 33} The trial court found that appellant could not perform an essential function of his job, working overtime. Despite appellant's arguments to the contrary, the court reasoned that since appellee's business is to provide electricity to consumers, it is incumbent upon appellee to keep power outages to a minimum. Therefore, overtime is an essential function of appellant's job. The court also pointed out that appellant's collective bargaining agreement ("CBA") requires employees to work overtime when requested by the employer. And it noted that the other power plant attendant B employees worked significant overtime.

{¶ 34} The Ohio Supreme Court has stated that we may look to federal regulations and cases interpreting the ADA for guidance in our interpretation of Ohio law. *Columbus Civ. Serv. Comm. v. McGlone* (1998), 82 Ohio St.3d 569, 573, 697 N.E.2d 204. The Code of Federal Regulations lists nonexclusive factors for courts to consider when determining whether a job function is essential. Section 1630.2(n)(3), Title 29, C.F.R. They are (1) the employer's judgment as to which functions are essential, (2) written job descriptions prepared before advertising for or interviewing job applicants, (3) the amount of time spent performing the function, (4) the consequences of not requiring the employee to perform the function, (5) the terms of a collective bargaining agreement, (6) the work experience of past employees in the job, and (7) the current work experience of employees in similar jobs. Section 1630.2(n)(3), Title 29, C.F.R.

{¶ 35} Examining the factors in light of this case reveals the following.

{¶ 36} First, appellee believes that overtime is an essential function of appellant's job and all jobs at Sammis. (Defendant's Exh. B, at 27.)

{¶ 37} Second, there is not a written job description that states that overtime is or is not required. Appellant points to a job description appellee attached to a letter, which does not list overtime as one of his duties. (Plaintiff's Exh. 12.) However, the description does list "Performing other work as assigned" as a duty, which could include overtime. (Plaintiff's Exh. 12.)

{¶ 38} Third, while the amount of time spent working overtime varies, employees overall spend a significant amount of time on overtime. Lubich stated that in 2000, the overtime rate for Sammis neared 40 percent. (Defendant's Exh. B, at 18–19.) This meant that the employees worked approximately 16 hours of overtime per week. (Defendant's Exh. B, at 18–19.) In 2001, Sammis lowered its overtime by hiring more employees, yet overtime was still at 28 percent. (Defendant's Exh. B, at 22–23.)

{¶ 39} Fourth, the consequences of not requiring appellant to work overtime are as follows. Other employees will have to work more overtime. (Defendant's

Exh. B, at 17.) Because the other employees work more overtime, they become burned-out, which leads to lower productivity and an increased number of accidents. (Defendant's Exh. B, at 19–20.) Additionally, having employees who are unable to work overtime puts a burden on the company because then it may not be able to get equipment back into service in the time it tells its customers. (Defendant's Exh. B, at 17–18.) Furthermore, the longer an outage lasts, the more money the company loses. (Defendant's Exh. B, at 18.)

{¶ 40} Fifth, appellant's CBA specifically states, "[E]mployees will work overtime when requested by the Company and will respond promptly when called out for special or emergency work." (Defendant's Exh. A; Plaintiff's Exh. 11.) The CBA also sets out the means by which overtime will be distributed. It states that "call boards" shall be set up in each department to show the overtime rotation. When an employee is called for overtime, his name goes to the bottom of the list, whether he accepts or rejects the overtime. Lubich testified that if no employee accepts the overtime, then the least senior employee is "drafted" to work the overtime shift. (Defendant's Exh. B, at 29–30; Plaintiff's Exh. Lubich Depo. at 57–58.) Dennis Waldron, the local union secretary, confirmed that the union has agreed to this drafting procedure. (Defendant's Exh. B, at 131–132.)

{¶ 41} Sixth, the only evidence on the record of how much overtime other employees have worked are the statistics for the years 2000 and 2001. However, evidence does exist that Sammis has permitted other employees, including appellant, to be exempt from working overtime temporarily when medically required. (Plaintiff's Exh. Lubich Depo. at 72–73.) This accommodation is provided only when an employee's restriction is temporary. (Plaintiff's Exh. Lubich Depo. at 72–75.) Appellant's condition is permanent. (Plaintiff's Exh. 6, 8.)

{¶ 42} Finally, Lubich, Ryhal, and Jerry Duncan, the local union treasurer, confirmed that all Sammis employees are expected to work overtime. (Defendant's Exh. B, at 30, 120, 143.)

{¶ 43} Additionally, as appellee has noted, other courts have found overtime to be an essential function of certain jobs. For instance, in *Davis v. Florida Power & Light Co.* (C.A.11, 2000), 205 F.3d 1301, the 11th Circuit upheld the district court's award of summary judgment in favor of a Florida power plant that discharged Davis after he refused to work overtime after injuring his back. In determining that overtime was an essential job function, the court analyzed the Section 1630(n)(3), Title 29, C.F.R, factors. It noted that the power plant deemed mandatory overtime as essential, due in part to the unique nature of the electricity business. *Id.*, 205 F.3d at 1305. It also noted that Davis admitted that overtime was represented to him as a condition of employment. *Id.* The court further observed that all of the positions at the power plant involved a

substantial amount of overtime, i.e., each employee in Davis's position worked 216 overtime hours in 1996. Id. Finally, the court found it significant that the collective bargaining agreement granted the power plant the right to require involuntary overtime and outlined the methods by which it could do so. Id.

{¶ 44} The C.F.R. factors weigh heavily in appellee's favor. Appellant cannot point to a single factor that creates a genuine issue of material fact as to whether overtime is an essential job function. Given the nature of the electricity business, the amount of overtime worked by Sammis employees, and the CBA's express language, there is no genuine issue of fact that overtime is an essential function of appellant's job. Accordingly, appellant's assignment of error is without merit.

{¶ 45} For the reasons stated above, the trial court's judgment is hereby affirmed.

Judgment affirmed.

VUKOVICH and DEGENARO, JJ., concur.