[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *E. Ohio Gas Co. v. Croce*, Slip Opinion No. 2026-Ohio-75.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2026-OHIO-75

EAST OHIO GAS COMPANY, D.B.A. DOMINION ENERGY OHIO, APPELLEE, *v.* CROCE, JUDGE, APPELLEE; LANDMARK 2 LIMITED LIABILITY COMPANY ET AL., APPELLANTS.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *E. Ohio Gas Co. v. Croce*, Slip Opinion No. 2026-Ohio-75.]

*Public utilities—Prohibition—Subject-matter jurisdiction—Under* Allstate Ins. Co. v. Cleveland Elec. Illum. Co. *and R.C. 4905.26, court of appeals did not err in concluding that Public Utilities Commission has exclusive subject-matter jurisdiction over the claims asserted by natural-gas producers in their class action against public utility or in ordering common-pleas-court judge to cease exercising jurisdiction over the class action and vacate the orders that she previously issued in that case—Court of appeals' order granting summary judgment in favor of public utility affirmed.*

(No. 2024-1708—Submitted September 16, 2025—Decided January 14, 2026.)

APPEAL from the Court of Appeals for Summit County, No. 30687, 2024-Ohio-5194.

———————————

The per curiam opinion below was joined by KENNEDY, C.J., and FISCHER, DEWINE, BRUNNER, DETERS, HAWKINS, and SHANAHAN, JJ.

**Per Curiam.**

{¶ 1} Three natural-gas producers filed a class-action complaint against appellee the East Ohio Gas Company, d.b.a. Dominion Energy Ohio ("Dominion Energy") in the Summit County Court of Common Pleas on behalf of themselves and other Ohio natural-gas producers. They asserted claims of conversion and unjust enrichment, among other claims, alleging that Dominion Energy sold or used the natural gas they had delivered into Dominion Energy's pipeline system without compensating them.

{¶ 2} Dominion Energy requested a writ of prohibition in the Ninth District Court of Appeals against appellee, Judge Christine Croce, who was presiding over the class action. Dominion Energy argued that the Public Utilities Commission of Ohio ("PUCO" or "the commission") has exclusive jurisdiction over the class-action claims asserted before Judge Croce. The representative natural-gas producers—appellants, Landmark 2 Limited Liability Company ("Landmark 2"), Moore Resources, L.L.C., and Moore Well Services, Inc. (collectively, "the natural-gas producers")—were granted leave to intervene in the prohibition action.

{¶ 3} The Ninth District entered summary judgment in favor of Dominion Energy, granting its request for a writ of prohibition and concluding that the class-action claims before Judge Croce fall within PUCO's exclusive jurisdiction. The natural-gas producers appealed to this court. We affirm.

## I. FACTS AND PROCEDURAL HISTORY

**A. The Natural-Gas Producers File a Class Action Against Dominion Energy**

{¶ 4} Dominion Energy is a public utility approved by PUCO to distribute natural gas in Ohio through its pipeline system. The natural-gas producers are

Ohio-based producers of natural gas whose wells are connected to Dominion Energy's pipeline system.

{¶ 5} The natural-gas producers filed a class-action complaint against Dominion Energy in the Summit County Court of Common Pleas on behalf of themselves and all other Ohio natural-gas producers participating in Ohio's Energy Choice Program whose gas was delivered directly into Dominion Energy's pipeline system. Through the energy-choice program, natural-gas customers can choose whether to buy natural gas from Dominion Energy directly or from an independent gas supplier participating in the program (a "choice supplier"). According to the complaint, all the gas from the natural-gas producers' wells flows into Dominion Energy's pipeline system, irrespective of whether the natural-gas producers sell their gas to Dominion Energy or a choice supplier.

{¶ 6} In their class-action complaint, the natural-gas producers alleged that the choice suppliers compensate them only for the volume of gas that the choice suppliers estimate they will need for their customers. The choice suppliers' communication to Dominion Energy of the estimated volume of gas that it will need for its customers—i.e., the volume of gas they intend to have delivered into the pipeline system—is called nomination. The natural-gas producers asserted that they maintain title to the gas they deliver into Dominion Energy's pipeline system that exceeds the volume of gas nominated by the choice suppliers. They further asserted that Dominion Energy sells and otherwise benefits from the excess volume of gas that the natural-gas producers deliver into the pipeline without compensating them for it. According to the natural-gas producers, although Dominion Energy is required by law to reconcile the difference between the volume of gas they deliver into the pipeline system and the volume the choice suppliers nominate and pay for, Dominion Energy does not do so correctly.

{¶ 7} The class-action complaint cites Dominion Energy's energy-choice pooling-service tariff ("the tariff"). "Public utility tariffs are books or compilations

3

of printed materials filed by public utilities with, and approved by, the commission that contain schedules of rates and charges, rules and regulations, and standards for service." *Migden-Ostrander v. Pub. Util. Comm.*, 2004-Ohio-3924, ¶ 8, fn. 5. "The General Assembly has given the commission statutory authority to review and approve tariffs." *In re Complaint of Reynoldsburg*, 2012-Ohio-5270, ¶ 40. "[O]nce approved, a tariff has the same binding effect as a law." *Id*. at ¶ 41.

**{¶ 8}** In their class action, the natural-gas producers asserted claims of unjust enrichment and conversion as well as claims under R.C. 2307.60(A)(1) (permitting civil actions for damages resulting from criminal acts) and R.C. 2307.61 (permitting civil actions for damages resulting from theft). Dominion Energy filed a motion to dismiss the class action, asserting, among other arguments, that PUCO has exclusive jurisdiction over the claims asserted in the complaint. Judge Croce granted the motion in part and denied it in part, dismissing the conversion claim under Civ.R. 12(B)(6) but concluding that the common pleas court has jurisdiction over the other class-action claims.

**{¶ 9}** Dominion Energy filed an appeal from Judge Croce's order to the extent that she had denied its motion to dismiss. The Ninth District dismissed the appeal, determining that Judge Croce's order was not a final, appealable order. 2023-Ohio-1070, ¶ 16-17.

### B. Dominion Energy Seeks a Writ of Prohibition

**{¶ 10}** After the Ninth District dismissed Dominion Energy's appeal from Judge Croce's order in the class action, Dominion Energy filed a complaint for a writ of prohibition in the Ninth District against Judge Croce. Dominion Energy attached three exhibits to its prohibition complaint: (1) its energy-choice pooling-service tariff, (2) the class-action complaint filed by the natural-gas producers in the Summit County Court of Common Pleas, and (3) Judge Croce's order granting in part and denying in part Dominion Energy's motion to dismiss the class-action complaint.

{¶ 11} In arguing that PUCO has exclusive jurisdiction over the class-action claims, Dominion Energy cited the tariff's provisions concerning the reconciliation process. According to those provisions, if the volume of gas delivered into Dominion Energy's pipeline system on a choice supplier's behalf exceeds the volume the choice supplier nominated—i.e., estimated it would need for its customers—then the choice supplier's account, or "pool," is credited so that the choice supplier can use the additional gas the following month. If the volume of gas delivered into the pipeline system on a choice supplier's behalf falls short of the volume the choice supplier estimated, then the choice supplier's daily volume is negatively adjusted for the following month, such that additional natural gas must be delivered on the supplier's behalf to make up for the shortfall.

{¶ 12} Dominion Energy argued in its prohibition complaint that the natural-gas producers' claims against it arose from the services that it provides under the tariff governing its energy-choice program. It further asserted that it had correctly performed the reconciliation process set forth in the tariff. And it contended that to evaluate the natural-gas producers' claims, Judge Croce would need to resolve multiple issues over which PUCO has exclusive jurisdiction. Therefore, Dominion Energy asserted, Judge Croce patently and unambiguously lacks subject-matter jurisdiction over the natural-gas producers' class action.

{¶ 13} The Ninth District issued an alternative writ, granted the natural-gas producers leave to intervene, and permitted the parties to file motions for summary judgment. All parties moved for summary judgment. Dominion Energy did not file exhibits with its motion for summary judgment but, rather, cited the exhibits it had filed with its prohibition complaint.

### C. The Ninth District Grants a Writ of Prohibition

{¶ 14} The Ninth District applied the two-part test adopted by this court in *Allstate Ins. Co. v. Cleveland Elec. Illum. Co.*, 2008-Ohio-3917, to determine whether a claim falls within PUCO's exclusive jurisdiction. 2024-Ohio-5194, ¶ 19

(9th Dist.). The Ninth District concluded that the test had been satisfied and that PUCO therefore has exclusive jurisdiction over the natural-gas producers' class action. *Id.* at ¶ 22, 33. Accordingly, the court granted Dominion Energy's motion for summary judgment and granted a writ of prohibition ordering Judge Croce to cease exercising jurisdiction over the class action. *Id.* at ¶ 2, 33. One judge dissented, concluding that Dominion Energy had failed to demonstrate by clear and convincing evidence that the claims fell within PUCO's exclusive jurisdiction. *Id.* at ¶ 38 (Carr, J., dissenting).

{¶ 15} The natural-gas producers timely appealed the Ninth District's judgment to this court.

## II. ANALYSIS

{¶ 16} We review de novo a court of appeals' order granting summary judgment. *State ex rel. Whittaker v. Lucas Cty. Prosecutor's Office*, 2021-Ohio-1241, ¶ 8. To be entitled to a writ of prohibition, the relator must establish that (1) the respondent is about to exercise or has exercised judicial or quasi-judicial power, (2) the exercise of that power is unauthorized by law, and (3) the relator lacks an adequate remedy in the ordinary course of the law. *State ex rel. Doe v. Capper*, 2012-Ohio-2686, ¶ 10; *State ex rel. Jones v. Paschke*, 2022-Ohio-2427, ¶ 6. The relator must prove entitlement to the writ by clear and convincing evidence. *State ex rel. Federle v. Warren Cty. Bd. of Elections*, 2019-Ohio-849, ¶ 10. The third requirement need not be met if the respondent patently and unambiguously lacks jurisdiction. *Jones* at ¶ 6.

{¶ 17} When PUCO has exclusive jurisdiction over the subject of an action brought in a common pleas court, a writ of prohibition will issue to compel the common-pleas-court judge to cease exercising jurisdiction over the case and to vacate orders the judge previously issued. *See, e.g., State ex rel. E. Ohio Gas Co. v. Corrigan*, 2024-Ohio-1960, ¶ 29 ("*Corrigan*"); *see also State ex rel. Duke*

*Energy Ohio, Inc. v. Hamilton Cty. Court of Common Pleas*, 2010-Ohio-2450, ¶ 25 (granting writ of prohibition regarding service-related claim).

{¶ 18} R.C. 4905.26 provides that PUCO shall hear complaints filed against public utilities alleging that "any rate, fare, charge, toll, rental, schedule, classification, or service, or any joint rate, fare, charge, toll, rental, schedule, classification, or service rendered, charged, demanded, exacted, or proposed to be rendered, charged, demanded, or exacted, is in any respect unjust, unreasonable, unjustly discriminatory, unjustly preferential, or in violation of law, or that any regulation, measurement, or practice affecting or relating to any service furnished by the public utility, or in connection with such service, is, or will be, in any respect unreasonable, unjust, insufficient, unjustly discriminatory, or unjustly preferential." We have understood this grant of authority to mean that PUCO "has exclusive jurisdiction over various matters involving public utilities, such as rates and charges, classifications, and service, effectively denying to all Ohio courts (except this court) any jurisdiction over such matters." *State ex rel. Cleveland Elec. Illum. Co. v. Cuyahoga Cty. Court of Common Pleas*, 2000-Ohio-379, ¶ 13. Although a "court of common pleas is a court of general jurisdiction," "a 'court of common pleas lacks jurisdiction to hear a complaint regarding a utility's rates and services.'" *Corrigan* at ¶ 11, quoting *DiFranco v. FirstEnergy Corp.*, 2012-Ohio-5445, ¶ 23.

{¶ 19} Nevertheless, PUCO's "exclusive jurisdiction over service-related matters does not diminish 'the basic jurisdiction of the court of common pleas . . . in other areas of possible claims against utilities, including pure tort and contract claims.'" (Ellipsis in original.) *Allstate*, 2008-Ohio-3917, at ¶ 6, quoting *State ex rel. Ohio Edison Co. v. Shaker*, 1994-Ohio-450, ¶ 8.

{¶ 20} In *Corrigan*, we explained that PUCO has exclusive jurisdiction to first hear a complaint alleging that "a public utility has committed the misconduct contemplated by R.C. 4905.26; if the commission determines that the utility committed the misconduct, then a court of common pleas will hear [a] claim

seeking treble damages under R.C. 4905.61." *Corrigan* at ¶ 13. R.C. 4905.26 delineates the types of complaints a person may make to PUCO regarding services provided by a public utility, including a complaint that any measurement or practice affecting or relating to any service provided by the public utility is unreasonable, unjust, or insufficient.

### A. Judge Croce's Exercise of Judicial Power

{¶ 21} There is no dispute that Judge Croce exercised judicial power in the natural-gas producers' class action and would have continued to do so if not for the Ninth District's judgment granting the writ of prohibition. Instead, the arguments advanced in this appeal mostly concern whether PUCO has exclusive jurisdiction over the claims asserted in the class action such that Judge Croce patently and unambiguously lacks jurisdiction over it. For ease of analysis, we address the natural-gas producers' six propositions of law out of order.

### B. Whether PUCO Has Exclusive Jurisdiction

{¶ 22} As the natural-gas producers' second, third, and fourth propositions of law, they argue that Dominion Energy failed to present sufficient evidence to warrant summary judgment in their favor and that the Ninth District erred in applying the *Allstate* test. Because they are interrelated, we consider these arguments together to determine whether Dominion Energy showed by clear and convincing evidence that the *Allstate* test was satisfied.

{¶ 23} In evaluating whether PUCO has exclusive jurisdiction over the claims asserted in the class action, we do not look at how the natural-gas producers' claims are labeled but, rather, at whether the substance of the claims is service-related. *See Allstate*, 2008-Ohio-3917, at ¶ 8-9; *accord DiFranco*, 2012-Ohio-5445, at ¶ 26 (merely casting the allegations in a complaint as sounding in tort or contract is not sufficient to confer jurisdiction on a common pleas court). To help us determine whether a claim falls within PUCO's exclusive jurisdiction, we have applied a two-part test: "'First, is PUCO's administrative expertise required to

resolve the issue in dispute? Second, does the act complained of constitute a practice normally authorized by the utility?'" *Allstate* at ¶ 12, quoting *Pacific Indemn. Ins. Co. v. Illum. Co.*, 2003-Ohio-3954, ¶ 15 (8th Dist.). Under this test, a negative answer to either question suggests that a claim does not fall within PUCO's exclusive jurisdiction. *Allstate* at ¶ 13. While the statutory language is ultimately controlling, the *Allstate* test helps guide our inquiry into whether a matter is one that the General Assembly has entrusted to PUCO's exclusive jurisdiction.

*1. Whether PUCO's administrative expertise is required to resolve the issues in dispute*

{¶ 24} The natural-gas producers assert that their class action involves straightforward tort claims that do not implicate PUCO's expertise. They and Judge Croce contend that Dominion Energy's allegedly tortious acts are not governed by the tariff, because the gas for which they allegedly were not compensated was not "nominated or delivered to [Dominion Energy] by the Choice Suppliers." The natural-gas producers argue that conversion of natural gas "is neither a service nor a rate-related issue and does not require PUCO's administrative expertise to resolve." Further, they assert that determining the amount of natural gas for which they are not compensated "requires only reconciling production data with purchase records, a task well within judicial competence."

{¶ 25} In response, Dominion Energy argues that the General Assembly gave exclusive authority to PUCO to approve tariffs and hear complaints about them. According to Dominion Energy, PUCO has exclusive jurisdiction over the natural-gas producers' class-action claims because to be resolved, the claims require consideration of the tariff. In support of its position, Dominion Energy cites R.C. 4905.30, which requires public utilities to print and file their tariffs with PUCO.

{¶ 26} Quoting the class-action complaint in its merit brief, Dominion Energy notes the natural-gas producers' admission that under the PUCO-approved

tariff, Dominion Energy is "'supposed to make adjustments to reflect the volumes of gas actually delivered to it.'" This reconciliation process is set forth in Section 12 of the tariff. According to Dominion Energy, the natural-gas producers' assertion that Dominion Energy failed to properly compensate them essentially alleges that Dominion Energy violated the reconciliation provision of the tariff.

{¶ 27} Looking at the substance of the natural-gas producers' tort claims, we see that resolution of the claims ultimately depends on whether the allegedly tortious conduct was permitted by the tariff—i.e., whether Dominion Energy carried out the reconciliation process set forth in Section 12 of the tariff correctly or incorrectly. In their complaint, the natural-gas producers explicitly based their unjust-enrichment, conversion, and other claims on Dominion Energy's failure to correctly reconcile the difference between the volume of gas the natural-gas producers deliver into Dominion Energy's pipeline system and the choice suppliers' nomination. Moreover, the gravamen of the complaint is an allegation that Dominion Energy's measurement or practice of reconciling measurements in connection with a service it furnishes is unreasonable, unjust, or insufficient. In other words, the natural-gas producers complain that Dominion Energy has committed misconduct of the type contemplated in R.C. 4905.26. *See Corrigan*, 2024-Ohio-1960, at ¶ 13. The legislature in R.C. 4905.26 has explicitly placed such complaints under the jurisdiction of PUCO.

{¶ 28} This case presents a closer question than the one presented in *Corrigan*, because unlike the underlying claims in that case, the natural-gas producers' claims here do not center on Dominion Energy's relationship with its retail customers. Even so, R.C. 4905.26 requires PUCO to resolve the natural-gas producers' claims because resolving the claims will involve determining whether Dominion Energy correctly conducted the reconciliation process set forth in the tariff.

**{¶ 29}** Judge Croce argues, however, that PUCO lacks jurisdiction to adjudicate controversies regarding property rights. She admits that Dominion Energy does not claim title to the natural gas allegedly in controversy, but she argues that the controversy concerns property rights because the natural-gas producers asserted that Dominion Energy sold their natural gas without compensating them for it. In *In re Complaint of Wilkes v. Ohio Edison Co.*, 2012-Ohio-609, a case cited by Judge Croce, we held that PUCO lacked exclusive jurisdiction over a disputed issue involving competing property rights regarding an easement and that PUCO's expertise was not required to resolve the issue, *see id.* at ¶ 9-10.

**{¶ 30}** In another case involving an easement, *Corder v. Ohio Edison Co.*, we held that PUCO lacked exclusive jurisdiction over claims involving an easement because determining "the scope of an easement does not depend on the PUCO's exercise of its administrative expertise or its review of a public utility's vegetation-management program, but rather requires a court to interpret and apply the language of the instrument creating the easement." 2020-Ohio-5220, ¶ 2. However, in a case involving unambiguous easement language, we concluded that the complaint primarily concerned the application of a utility's PUCO-regulated vegetation-management plan, a service-related issue that was within PUCO's exclusive jurisdiction. *Corrigan v. Illum. Co.*, 2009-Ohio-2524, ¶ 15, 17, 20-21.

**{¶ 31}** In this case, as explained above, the underlying dispute concerns whether the natural gas delivered into Dominion Energy's pipeline system by the natural-gas producers has been correctly measured and accounted for as outlined in Dominion Energy's tariff, and that issue concerns the type of misconduct contemplated by R.C. 4905.26. Instead of the interpretation or enforcement of an easement, like in *Wilkes* and *Corder*, the disposition of the class-action claims here will depend on the interpretation of a tariff, which is regulated by PUCO.

**{¶ 32}** The natural-gas producers argue that in *State ex rel. Dayton Power & Light Co. v. Riley*, 53 Ohio St.2d 168 (1978), we held that a court of common pleas had jurisdiction to adjudicate claims similar to those asserted by the natural-gas producers here. In *Riley*, a public utility offered its customers an opportunity to store liquid propane under agreements approved by PUCO. A class-action complaint brought on behalf of the customers asserted that the public utility had breached the contracts by converting the propane to its own use. The public utility asked this court for a writ of prohibition to stop the class action from proceeding in common pleas court. We reiterated that "the courts of this state are available to supplicants who have claims sounding in contract against a corporation coming under the authority of the Public Utilities Commission," concluded that it had "not been shown, at th[at] point, that the respondent judge ha[d] no jurisdiction," and denied the utility's request for a writ of prohibition. *Id.* at 169-170.

**{¶ 33}** *Riley* bears some similarity to this case in the sense that the class action underlying this case concerns the alleged misappropriation of gas. In *Riley*, we found it persuasive that the underlying case concerned an alleged breach of contract. *See id.* However, *Riley* was decided before we adopted the *Allstate* test, which we currently use to help determine whether a claim falls within PUCO's exclusive jurisdiction. *See Corrigan*, 2024-Ohio-1960, at ¶ 14. As noted above, we look not at the labels used in the pleadings but, rather, at whether the substance of the claims is service-related. *Allstate*, 2008-Ohio-3917, at ¶ 8-9. Further, *Riley* is factually distinguishable from this case in that there is no contract between the natural-gas providers and Dominion Energy that governs the disputed issue. Rather, the tariff governs the issues and conduct that form the bases of the natural-gas producers' claims, and the claims essentially allege violations of R.C. 4905.26. Accordingly, *Riley* is not persuasive as to the proposition for which the natural-gas producers cite it.

{¶ 34} Ultimately, we conclude that the first part of the *Allstate* test was satisfied.

*2. Whether the alleged misconduct constitutes a practice normally authorized by the public utility*

{¶ 35} Regarding the second part of the *Allstate* test, the natural-gas producers argue that Dominion Energy's alleged retention and sale of excess gas delivered into its pipeline system by the natural-gas producers does "not fall within the category of authorized utility practices," because (1) the tariff "explicitly limits Dominion [Energy]'s authority to gas volumes nominated by Choice Suppliers under the Energy Choice Program" and (2) "gas not nominated is not covered by the Tariff and therefore falls outside the scope of practices regulated and authorized by PUCO." Judge Croce makes similar arguments. The natural-gas producers contend that Dominion Energy has acted outside the bounds of authorized utility practices by retaining and selling the gas that was not nominated.

{¶ 36} In response, Dominion Energy argues that receiving and pooling the natural gas that is delivered into its pipeline system and conducting the reconciliation process fall within the category of authorized utility practices. It asserts that PUCO requires that tariffs governing the energy-choice program address the nomination and delivery of gas. Lastly, Dominion Energy contends that nomination, subject to potential reconciliation, is a standard industry practice that courts have recognized in multiple jurisdictions.

{¶ 37} In *Corrigan*, a case heard in this court, the respondents argued that the disconnection of a customer's fully paid gas service in the winter was not a normally authorized practice, because such disconnections are prohibited by law. 2024-Ohio-1960 at ¶ 24. We rejected that argument, concluding that whether the shutoff was lawful was "a merits question left for resolution by the commission." *Id*. at ¶ 25. Instead, we asked whether the termination of service is a practice normally authorized by a utility, and we concluded that it is. *Id*.

**{¶ 38}** In this case, the question is whether Dominion Energy's practices of receiving natural gas into its pipeline system, measuring it, pooling it, and conducting the reconciliation process are practices normally authorized by a public utility. PUCO's regulations require that a tariff address the nomination process and the measurement of delivered gas. *See* Adm.Code 4901:1-13-14(A)(1) and (4). And PUCO's approval of Dominion Energy's energy-choice pooling-service tariff further shows that these are normally authorized utility practices. Even if Dominion Energy sold excess natural gas to which the natural-gas producers maintained title, as the natural-gas producers have alleged, the selling of natural gas is a practice normally authorized by a utility. But questions such as whether there was excess natural gas not covered by the tariff or whether Dominion Energy improperly retained and sold excess gas—i.e., whether Dominion Energy incorrectly conducted the reconciliation process—are questions for PUCO to decide. *See Corrigan* at ¶ 25.

**{¶ 39}** Therefore, the second part of the *Allstate* test was satisfied. Based on this test and the language of R.C. 4905.26, we conclude that the Ninth District was correct to conclude that PUCO has exclusive subject-matter jurisdiction over the claims asserted by the natural-gas producers in their class action.

### 3. Whether Dominion Energy submitted sufficient evidence to obtain summary judgment

**{¶ 40}** The natural-gas producers and Judge Croce argue that Dominion Energy did not present factual evidence sufficient to justify summary judgment in its favor. They contend that Dominion Energy relied in support of its request for a writ of prohibition on the tariff but failed to establish the applicability of the tariff to the resolution of the class-action claims.

**{¶ 41}** The evidence Dominion Energy submitted in the Ninth District consisted of the tariff, the natural-gas producers' class-action complaint, and Judge Croce's order granting in part and denying in part Dominion Energy's motion to

dismiss the class-action complaint. As shown by the analysis above, we are able to conclude based only on the class-action complaint and the tariff that both parts of the *Allstate* test were satisfied. Additionally, Judge Croce's order constitutes evidence sufficient to show that she had continued to exercise judicial power in the class action before the Ninth District granted the writ of prohibition. Dominion Energy thus presented factual evidence sufficient to justify summary judgment in its favor.

{¶ 42} Although Dominion Energy submitted the tariff, the class-action complaint, and Judge Croce's order with its complaint for a writ of prohibition, it did not resubmit them with its motion for summary judgment. However, the natural-gas producers and Judge Croce did not object to the Ninth District's consideration of the three exhibits as improper summary-judgment evidence in the proceedings below. In the absence of an objection, the Ninth District was permitted to consider the exhibits in ruling on the parties' motions for summary judgment. *See Sanders v. FirstEnergy Corp.*, 2004-Ohio-3214, ¶ 20 (7th Dist.) ("while a court is not required to consider improper summary judgment evidence, it *may* consider such evidence if neither party objects" [emphasis in original]); *see also Stegawski v. Cleveland Anesthesia Group, Inc.*, 37 Ohio App.3d 78, 83 (8th Dist. 1987) ("Failure to move to strike or otherwise object to documentary evidence submitted by a party in support of, or in opposition to, a motion for summary judgment waives any error in considering that evidence under Civ.R. 56(C).").

{¶ 43} As for the argument that Dominion Energy failed to establish the applicability of the tariff to resolution of the class-action claims, as explained above, the question whether the tariff applies to the tortious conduct alleged by the natural-gas producers is one for PUCO to decide. Dominion Energy sufficiently established that the question of the tariff's applicability to the resolution of the class-action claims renders the claims subject to PUCO's exclusive jurisdiction.

**{¶ 44}** In conclusion, the Ninth District did not err in determining that PUCO has exclusive jurisdiction over the claims asserted in the natural-gas producers' class action and issuing a writ of prohibition ordering Judge Croce to cease exercising jurisdiction over the class action and vacate the orders that she previously issued in that case. Because PUCO has exclusive jurisdiction over the claims asserted by the natural-gas producers in their class action, Judge Croce patently and unambiguously lacks subject-matter jurisdiction over those claims.

### C. Additional Arguments

#### 1. *The natural-gas producers' first proposition of law*

**{¶ 45}** As the natural-gas producers' first proposition of law, they argue that the fact that two of the four judges who have considered the issue—Judge Croce and the dissenting court-of-appeals judge—determined that Judge Croce has jurisdiction over their class action shows that she did not patently and unambiguously lack jurisdiction. In asserting this argument, the natural-gas producers misunderstand our standard of review. Whether PUCO or Judge Croce has jurisdiction over the class action is before us to determine on de novo review, meaning that we consider the issue without deference to the determinations of the courts below. *See Whittaker*, 2021-Ohio-1241, at ¶ 8. Accordingly, we reject the natural-gas producers' first proposition of law.

**{¶ 46}** In further response to the natural-gas producers' first proposition of law, Judge Croce argues that Dominion Energy may not seek a writ of prohibition as a collateral attack on Judge Croce's determination that she has jurisdiction over the natural-gas producers' class action, because Dominion Energy will be able to appeal the issue of subject-matter jurisdiction after a final judgment is issued in the class action. However, because Judge Croce patently and unambiguously lacks jurisdiction over the claims asserted in the class action, the availability of an appeal is immaterial. *See, e.g.*, *State ex rel. Harsh v. Oney*, 2014-Ohio-458, ¶ 6.

*2. The natural-gas producers' fifth proposition of law*

{¶ 47} As their fifth proposition of law, the natural-gas producers assert that "[p]ublic [p]olicy [d]emands [j]udicial [o]versight," but they do not actually make any policy arguments in support of the proposition. Instead, they reiterate their argument that PUCO is not the proper forum in which to resolve their claims against Dominion Energy and they argue that PUCO lacks the ability to award damages.

{¶ 48} However, we explained in *Corrigan*:

> Read together, R.C. 4905.26 and 4905.61 establish that the commission will first hear a person's complaint alleging that a public utility has committed the misconduct contemplated by R.C. 4905.26; if the commission determines that the utility committed the misconduct, then a court of common pleas will hear the person's claim seeking treble damages under R.C. 4905.61.

2024-Ohio-1960 at ¶ 13. Accordingly, the fact that PUCO has jurisdiction first to determine whether Dominion Energy committed misconduct as contemplated by R.C. 4905.26 does not preclude the natural-gas producers from later seeking damages in a court of common pleas. Therefore, we reject the natural-gas producers' fifth proposition of law.

*3. The natural-gas producers' sixth proposition of law*

{¶ 49} As their sixth proposition of law, the natural-gas producers argue that Dominion Energy was not entitled to summary judgment in its favor, because there is an unresolved issue of material fact as to whether the natural-gas producers' wells deliver into Dominion Energy's pipeline system gas that is not nominated and sold by the choice suppliers. In addition, Judge Croce contends that the difference of opinion between Dominion Energy and the natural-gas producers about whether

17

the tariff applies to gas that was not nominated by the choice suppliers is sufficient to establish a genuine issue of material fact.

{¶ 50} However, as explained above, that question is one for PUCO to decide. And although the question remains outstanding, no unresolved genuine issues of material fact remained for the Ninth District to determine that PUCO has exclusive jurisdiction over the claims asserted in the natural-gas producers' class action.

{¶ 51} Finally, as an additional reason why Dominion Energy was not entitled to summary judgment in the prohibition action, Judge Croce contends that Dominion Energy had failed to present evidence supporting its assertion that the choice suppliers received all the natural gas that was delivered into Dominion Energy's pipeline system. However, that was likewise not an issue of fact material to the determination of whether PUCO has exclusive jurisdiction over the natural-gas producers' class-action claims. Rather, it remains a matter for PUCO to determine whether Dominion Energy's measurement of the natural gas or its practice of reconciling the measurements was unreasonable or insufficient, as contemplated in R.C. 4905.26. *See Corrigan*, 2024-Ohio-1960, at ¶ 25. Therefore, we reject the natural-gas producers' sixth proposition of law and Judge Croce's related arguments.

### III. CONCLUSION

{¶ 52} For the reasons explained above, we affirm the Ninth District's judgment granting a writ of prohibition ordering Judge Croce to cease exercising jurisdiction over the natural-gas producers' class action and to vacate the orders that she previously issued in that case.

Judgment affirmed.

—————————

Jones Day, James R. Saywell, and Samuel Evan Milner, for appellee East Ohio Gas Company, d.b.a. Dominion Energy Ohio.

Elliot Kolkovich, Summit County Prosecuting Attorney, and Jennifer M. Piatt, Assistant Prosecuting Attorney, for appellee Judge Christine Croce.

Levetown Law, L.L.P., and Andrew S. Levetown; DiCaudo, Pitchford & Yoder, L.L.C., and Marshal M. Pitchford; Smith Law Firm, P.L.L.C., R. Allen Smith, and Madison Coburn Keyes; and Webster Book, L.L.P., and Steven T. Webster, for appellants.

_____